THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
DONALD P. KAISER, Defendant-Appellee.

Second District   No. 2—91—0453

Opinion filed December 29, 1992.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers, Lawrence M. Bauer, and Cynthia N. Schneider, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Dennis Brown and Mark Sikora, both of Driscoll & Driscoll, of Schaumburg, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Pursuant to Supreme Court Rule 604(a)(1) (134 Ill. 2d R. 604(a)(1)), the State takes an interlocutory appeal of the circuit

court's order of April 8, 1991, which quashed the State's subpoena *duces tecum* and resulted in the suppression of the evidence sought by the subpoena. Defendant, Donald P. Kaiser, had moved to suppress the subpoena and suppress the evidence sought on the basis that the State's use of the subpoena procedure to obtain his medical records was improper and sought to obtain privileged matter. The question presented on review is whether the court's order granting defendant's motion to quash and suppress was proper under the circumstances. We affirm.

Defendant was charged with driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501), improper backing up (Ill. Rev. Stat. 1989, ch. 95½, par. 11—1402), and improper lane usage (Ill. Rev. Stat. 1989, ch. 95½, par. 11—709). According to the record, defendant was arrested by the Carpentersville police for DUI on July 26, 1990. Sometime after his arrest, he was taken to Sherman Hospital in Elgin, Illinois, by the police for a mental evaluation. On February 6, 1991, the State caused to be issued a criminal subpoena *duces tecum* commanding the keeper of the records of the hospital to produce the following to be used as evidence: "Any and all medical records pertaining to the hospitalization to Donald P. Kaiser on July 26, 1990. D.O.B. 8/19/36. In lieu of appearance, please send medical records to Joseph Rago, Kane County State's Attorney's Office, *** Geneva, Illinois." The subpoena was served on February 11, 1991.

Defendant filed a motion to quash and suppress evidence on March 21, 1991. The motion averred that the State did not apprise defendant of the material sought through the use of the subpoena in the form of a discovery request or motion for discovery prior to the issuance of the subpoena, nor did the State send notice of the issuance of the subpoena. The State apparently received and reviewed the records from the hospital which were alleged to be protected (privileged) under the Mental Health and Developmental Disabilities Confidentiality Act (Act or Confidentiality Act) (Ill. Rev. Stat. 1991, ch. 91½, par. 801 *et seq.*). On March 21, defendant also filed a motion *in limine* to bar the introduction of any evidence regarding the test results of defendant's blood alcohol.

Defendant averred that the State obtained his medical records from the hospital using a subpoena without any knowledge of the existence of any chemical tests and did so without notice to defendant. Because defendant's records were obtained without his knowledge, he was precluded from objecting on the ground of privilege or as to the manner in which the records were received by the State.

Among other things, defendant argued in his motion that the use of the subpoena is not intended as a means of discovery in criminal cases (citing *People ex rel. Fisher v. Carey* (1979), 77 Ill. 2d 259) and that where documents are delivered directly to the State's Attorney, the subpoena is defective as it improperly circumvents judicial review, particularly as to privileged information, until after the matter has been disclosed (citing *People v. Hart* (1990), 194 Ill. App. 3d 997).

On March 25, 1991, defendant's motion to quash and suppress was granted. The cause was continued on the State's motion for a hearing. The order recited that a second subpoena was issued in accordance with *Hart* and that all medical records regarding the treatment of defendant were to be returned to the court on April 8, 1991.

The State issued a second subpoena commanding the hospital's keeper of the records to appear in court and to produce "[a]ny and all medical records, blood test results, etc. regarding the care and treatment of Donald P. Kaiser, DoB 8-19-36, on or about 7-26-90." The second subpoena was served on March 26, 1991.

Defendant again moved that the subpoena be quashed and the evidence suppressed. In support of his motion, defendant noted that, had defendant been given the opportunity to object to the receipt of the records initially obtained through the improper use of a subpoena *duces tecum,* the State would have had no knowledge or opportunity to use the information contained in those records and that the present use of the subpoena sought records which were now "tainted." Further, defendant stated that the demand for *all* records was overly broad and was not specified in reasonable detail. The State was seeking to obtain privileged medical records through the issuance of a second subpoena initially obtained through an improper "search and seizure," and defendant characterized the second attempt as one seeking evidence which should be suppressed as the "fruit of the poisonous tree" (citing *People v. Davis* (1980), 86 Ill. App. 3d 557). Defendant renewed his argument that, in any case, because the material was obtained in the course of treatment, it was the product of a physician-therapist relationship; the material was thereby privileged or protected from disclosure under the Act.

Defense counsel's affidavit in support of the motion stated that he had a telephone conversation with Helen Stowe, an employee of the hospital. Counsel learned that, in response to the (second) State's subpoena of March 1991, the hospital gave defendant's records to the State's carrier, Wayne Henke, when the subpoena was

tendered. The defendant had not authorized the release of the records.

■■ On April 8, 1991, after a hearing, the court impounded the records and quashed the subpoena in reliance on *Village of Arlington Heights v. Bartelt* (1991), 211 Ill. App. 3d 747. Among other things, *Bartelt* stands for the following proposition: as an exception to the physician-patient privilege, even though section 11—501.4 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.4) permits the written results of blood-alcohol tests to be admissible in DUI prosecutions when the tests are conducted in the regular course of providing emergency treatment under the enumerated criteria, the nature of the physician-patient relationship is such that the patient has a right to expect that his or her medical records will only be disclosed pursuant to judicially authorized methods of discovery. *Bartelt*, 211 Ill. App. 3d at 750, citing *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581 (barring *ex parte* conferences between a physician and the patient's legal adversary, even where the exception for malpractice cases applies).

The State first argues that the subpoenaed records were admissible under section 11—501.4 of the Code and that the trial court improperly relied on *Bartelt* in quashing the subpoena. In that case, the DUI arrest was not made until some time after the defendant was treated at the hospital and the nurse orally disclosed the results of a blood-alcohol test to the officer; the officer lacked probable cause to arrest until he was made aware of the test results, and the officer had not ordered the test. The State appears to read the holding of *Bartelt* narrowly to mean that the results were barred solely because they were used to develop probable cause for the arrest. The State urges that *Bartelt* is distinguishable from the facts of the case at bar because the defendant here had already been arrested on the basis of probable cause.

The State ignores the further holding of *Bartelt* which states that, even where the Code provides for an exception to the the statutory physician-patient privilege, the privilege will be deemed to apply, rather than the exception for written blood-alcohol tests, because the patient has the right to expect that his or her records will only be disclosed pursuant to *judicially authorized methods of discovery*. Citing *Mapp v. Ohio*, the *Bartelt* court concluded that, absent the improperly disclosed information, there was no probable cause to arrest defendant and affirmed the defendant's motion to quash. See *Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81

S. Ct. 1684 (fourth amendment right of privacy is enforceable against the States through the due process clause and all evidence obtained by unconstitutional searches and seizures is inadmissible in a State court).

In the case at bar, at the hearing on defendant's second motion to quash and suppress, the court made the following observations:

"THE COURT: I take it that in our case there was no formal request for the blood test similar to the Arlington Heights case?

\* \* \*

THE COURT: I have looked at the case. One of the things that makes it fall within all fours in this case is that it was taken not pursuant to a request by the police ordering that the test results be submitted. There is no formal request for a blood test by the police.

MR. BURSH [assistant State's Attorney]: Correct, your Honor. There is no request by a police officer. That would fall under Chapter 95½ 11—501.2 where there is a specific request by the police officer as to the blood results.

THE COURT: Or even if you follow up that test by the administrator at the hospital.

All it seems to say is that normally these results are made available providing that an arrest is made pursuant to the proper statutory section and pursuant to a request for the results of a blood test to be utilized. That was not made in this case. There was never any request for a blood test substantiated under an 11—501 charge, counsel, to subpoena the results. \* \* \*

\* \* \*

THE COURT: But now are we bootstrapping ourself into a conviction or substantiation by the results of a blood test administered sometime after the arrest was made and not pursuant to a request by the police department?"

The State then argued that the results of the blood test were admissible under the Code (section 11—501.4) if certain foundational requirements were met.

The court replied:

"THE COURT: Then this [Bartelt] court goes on to say that even if the exception did apply, the nature of the patient-client privilege is such that, unless it was disclosed properly pursuant to an act on behalf of the police department requesting the results of the test at that time, or some-

time when it was administered, then it is subject to a Motion to Quash because of the physician-patient privilege.

\* \* \*

THE COURT: Well, I am going to quash the results of the blood test and the authority for that is the Village of Arlington Heights case, and to proceed without the existence of a blood test.

That is the ruling of the court."

The State made an offer of proof in anticipation of the appeal of this ruling. Mary Henry testified that she was present in court in response to the second subpoena and that she was responsible for maintaining the records at the hospital. She brought with her the medical records pertaining to defendant's treatment on or about July 26, 1990. She acknowledged that the records contained information regarding the mental health treatment of defendant.

On cross-examination, in response to defense counsel's question whether the records were again released to a State's Attorney's carrier that morning, Henry said:

"A. I am sorry, I don't know the carrier. I know they were released.

Q. Prior to coming here this morning?

A. Yes.

Q. And you have released those records twice; is that correct?

A. Well, yes—once.

Q. And neither time did you have a court order; is that correct?

A. No, not a court order."

On redirect examination, the following colloquy took place:

"Q. Ma'm, are you aware of the fact that the State's Attorney's office, as soon as they received the hospital records that counsel is referring to, that they were immediately returned and that you were advised that you must appear and present the documents to the court?

A. Yes, I do."

Henry also stated that the records were emergency room records and the matter concerned the diagnosis of defendant. At the conclusion of the hearing, the trial court ordered the records sealed and sustained the motion to quash.

Although the record is less than crystal clear, it appears that defendant's records were released twice to the State, once each in response to the subpoenas. It is clear from the court's comments

that the ruling was made on the basis that the State's subpoena procedure was improper and the motion to quash was allowed on the basis of privilege. We believe that there is sufficient evidence in the record to show that the records were in fact privileged. The protection of the Confidentiality Act is broader than the physician-patient privilege, and all communications and records generated in connection with providing mental health services to a recipient are protected unless excepted by law. (Ill. Rev. Stat. 1989, ch. 91½, pars. 802, 803; see R. Ruebner, Illinois Criminal Trial Evidence 131 (2d ed. 1992).) The State has not shown that the matter in question was not privileged. See *People v. Sanders* (1982), 111 Ill. App. 3d 1, 13, and we analyze this case based on that premise.

The State fails to separate distinctly the potential issues encompassed by the court's ruling. First, the question of admissibility of the blood-alcohol evidence once foundational requirements have been met is distinct from the question whether the materials were obtained by an improper procedure in the first place or whether the subpoena was otherwise defective because it was "oppressive, unreasonable or overbroad" (*Carey*, 77 Ill. 2d at 270). In addition, those questions are distinct from whether the court applied the appropriate remedy under the circumstances.

First, it is established law in Illinois that, unlike discovery material, subpoenaed material is ordinarily to be delivered directly to the court because the subpoena is a judicial process or writ of the court. (*Carey*, 77 Ill. 2d at 265; *People v. Walley* (1991), 215 Ill. App. 3d 971, 974.) The court then determines the relevance and materiality of the subpoenaed materials, whether they are privileged, and whether the subpoena is unreasonable or oppressive. *Walley*, 215 Ill. App. 3d at 974.

In *People v. Hart* (1990), 194 Ill. App. 3d 997, 1002, this court determined that the use of the subpoena procedure similar to the one initially used here was defective in several respects. First, the procedure provided for extrajudicial delivery and inspection of the materials in violation of the principles stated in *Carey*. By that procedure, the State effectively circumvented any judicial review, particularly as to privileged matter until after it had been disclosed to the State.

Furthermore, the defendant was never made aware of the materials sought by the subpoena *duces tecum* and was thereby denied any meaningful opportunity to object. (In *Hart*, the State also failed to cite any authority permitting it to issue a subpoena *duces tecum* for a nonexistent court date.)

In *Walley* (215 Ill. App. 3d 971), based on facts similar to those in the present case, this court again addressed the issue of the State's improper use of the subpoena *duces tecum* in obtaining the defendant's emergency room medical records. The trial court quashed the original subpoena and barred the State from using evidence obtained as a result of the original improper procedure—including records obtained from a second hospital which only became known through the examination of the records of the first hospital. The trial court found that the sanction was necessary to protect the rights of the defendant and to prevent further abuses by the State.

On appeal, the State contended that the trial court's ban on the use of evidence obtained, revealed or tainted by the original, admittedly improper, subpoena *duces tecum* was an excessive and inappropriate sanction. In *Walley*, we found no abuse of discretion on the part of the trial court and affirmed the exclusion of the evidence as a sanction without determining whether the physician-patient privilege applied as there was another motion pending in the trial court on that issue.

■ Based on the circumstances of this case, it is clear that the first subpoena was improper and the court properly quashed it and suppressed the evidence derived from that procedure. As to the second ruling, we believe that the trial court was attempting to perform—belatedly because of the State's improper procedure—the evaluation of the same material sought by the first subpoena. The second subpoena again resulted in the delivery of any and all records regarding the treatment of defendant, who was admitted to the hospital for mental health reasons. Because the court relied on *Bartelt* in sustaining the motion to quash, it is also clear that the trial court found these records to be privileged and that the privilege applied over the Code's exception in the absence of a judicially recognized method of discovery.

Except for the citation to section 11—501.4 of the Code which pertains to the admissibility of written results of a blood-alcohol test generated during the course of treatment in an emergency room if the foundational requirements are met, the State offers no authority supporting the procedure it used to obtain the records in this case. Indeed, the overall thrust of *Hart, Bartelt*, and *Walley* is to the contrary. But for the first subpoena, the very existence of any blood-alcohol test would not have been known to the State since the police brought defendant to the hospital for a mental evaluation and not for the purpose of conducting blood-alcohol tests.

For all practical purposes and effects, the court's hearing following the issuance of the second subpoena was a continuation of the matter to sustain the quashing of the original subpoena and the fruits thereof. The same material was in question and all of defendant's records were requested. There was apparently a second delivery of the material to the State. The State argues that the second subpoena should not have been quashed as the tainted fruit of the first subpoena and urges that the second subpoena was not affected by the first. We disagree. Our courts have rejected this type of argument. The sanctions imposed in *Walley* were premised at least in part on the notion that the evidence revealed was the result of an improper initial subpoena.

Because of the importance of the confidential relationship that exists between a treating physician and patient, *ex parte* communication regarding the patient without the patient's consent between the patient's treating physician and the patient's legal adversary has been strongly condemned as violative of public policy, and courts will not hesitate to remedy improper disclosures; the use of such "tainted" evidence may result in reversible error. (See *Yates v. El-Deiry* (1987), 160 Ill. App. 3d 198, 202-04, relying on *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581.) The same principle would apply to the therapist-patient relationship. An "after-the-fact" ruling to remedy a breach of trust may not be sufficient to repair the damage done to the confidential physician- or therapist-patient relationship. See *Yates*, 160 Ill. App. 3d at 203.

There is nothing in the record to show that the State's issuance of the subpoena in the first instance was anything other than a "fishing expedition" based on speculation that the privileged records might be relevant. (See *People v. Williams* (1985), 131 Ill. App. 3d 597, 607.) Although the State complains for the first time on appeal that the trial court did not make an *in camera* inspection, there is no indication that the State ever specifically requested a confidential *in camera* inspection of the records as provided by the Confidentiality Act (*Williams*, 131 Ill. App. 3d at 607; Ill. Rev. Stat. 1991, ch. 91½, par. 810). Although the trial court did not explicitly state that the evidence was suppressed as a sanction, there is no doubt that the court could protect its processes in that manner in order to ensure that the defendant has a fair trial. (See *Walley*, 215 Ill. App. 3d at 974-75.) Our supreme court has emphasized that a court must not hesitate to act on motions to quash subpoenas which are "oppressive, unreasonable or overbroad." *Carey*, 77 Ill. 2d at 270.

We cannot say that second ruling was error or that the evidence sought was untainted by the issuance of the first subpoena. At least three recent appellate decisions have put the State on notice that this type of subpoena procedure is impermissible. The State should not now complain that it will not be allowed the use of evidence improperly obtained. To conclude otherwise would be to open the door to further abuses by the State and to deprecate the importance of the defendant's privacy rights.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and GEIGER, JJ., concur.