THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JERRY P. HATHAWAY, Defendant-Appellee.

Fourth District   No. 4—93—0829

Opinion filed June 27, 1994.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Jim Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Brown, of Law Office of Daniel D. Brown, of Danville, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In August 1993, the trial court granted defendant's motion to suppress all evidence obtained through the alleged improper use of the subpoena power by the Vermilion County State's Attorney's office. The State appeals, and we reverse.

## I. BACKGROUND

In December 1991, defendant, Jerry Hathaway, was involved in a one-car accident in Vermilion County. Deputy William Cottrell, the first officer to arrive at the scene, noticed the smell of alcohol about defendant before he was taken by ambulance to United Samaritan's Medical Center (USMC). While at the hospital, a blood sample was obtained from defendant, and two blood-alcohol tests were performed, one pursuant to police request, the other in the regular course of medical care and treatment.

In March 1992, the Vermilion County State's Attorney's office charged defendant by information with driving under the influence of alcohol (count I) (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501(a)(2)), and driving with a blood-alcohol concentration of greater than 0.10 (count II) (Ill. Rev. Stat. 1991, ch. 95$^1$/$_2$, par. 11—501(a)(1)).

The day after the State filed the information, a worker in the records department of USMC was served with a subpoena *duces tecum.* The subpoena commanded USMC to produce all medical records relating to defendant's blood-alcohol analysis to the trial court "forthwith." The subpoena did not contain a date on which the records must be produced, and no hearings were scheduled on the day the subpoena was served or the day when USMC ultimately produced the records. Defendant was not notified of the subpoena or the State's interest in his medical records.

Pursuant to the subpoena and USMC's usual practice with the State's Attorney's office, USMC gave the records directly to the State's Attorney's office, not to the trial court. These records included material related to the blood-alcohol tests and approximately 18 pages of other medical records. Staff from the State's Attorney's office placed this material in the public court file in March 1992. In November 1992, defendant filed a motion to suppress the blood test requested by the police based on his assertion that the police did not

have probable cause to arrest him at that time and, therefore, did not have the authority to order the blood test.

Also in November 1992, a second subpoena was served on USMC. This subpoena commanded the production—in a sealed condition to the trial court—of records relating to the blood tests conducted upon defendant on the day of the accident. This subpoena once again required production "forthwith" rather than on a particular date. In response to this subpoena, a sealed envelope addressed to "Judge Skowronski" and containing the material sought was placed in the court file.

In January 1993, the trial court conducted a hearing on defendant's motion to suppress and ordered the suppression of the blood test ordered by Cottrell. In July 1993, defendant filed a motion to suppress the second blood test, alleging breach of the physician-patient privilege. The court denied that motion, relying on section 11—501.4 of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501.4 (West 1992)), which allows the admission of written blood tests when conducted in the regular course of emergency medical treatment.

In August 1993, defendant filed a motion seeking to enjoin the use of defendant's blood test, alleging improper use of the subpoena process. The trial court, treating this motion as a motion to suppress, conducted a hearing and made the following findings: (1) the subpoenas did not contain return dates; (2) they commanded a return "forthwith"; (3) no hearings were scheduled on the day when the subpoenas were served or when USMC complied with them; (4) the responses were given to the State's Attorney's office instead of the court; and (5) defendant never consented to the release of this medical information. The court then granted defendant's motion and suppressed all information received in response to the second subpoena. The State appeals that ruling.

We add that although the matter is not as clear as it should be, it appears to us that the State is challenging on appeal only the trial court's ruling as to the second subpoena. Thus, we address solely that ruling. For the reasons that follow, however, if the State were appealing the court's order regarding the first subpoena, we would affirm that ruling.

## II. ANALYSIS

The State concedes that the subpoena procedure it first employed may have been improper because it allowed for the extrajudicial production of the records. The State argues nonetheless that regarding the second subpoena (the matter on appeal), it did not act in bad faith and the trial court's sanction of suppression of the evidence was excessive.

In making its ruling, the trial court relied in part on *People ex rel. Fisher v. Carey* (1979), 77 Ill. 2d 259, 265, 396 N.E.2d 17, 19-20, where the supreme court held that in criminal proceedings, subpoenaed material should be sent directly to the court so that the court could then determine the relevancy and materiality of the materials, and whether they are privileged. This opportunity for judicial examination of the material, along with the opportunity to challenge the subpoena, either when served or when presented in court, is one of the justifications for the subpoena exception to the probable cause requirements of the fourth amendment. *People v. Smith* (1994), 259 Ill. App. 3d 492, 503, 631 N.E.2d 738, 745; see generally 2 W. LaFave, Search & Seizure § 4.13(e), at 382 (2d ed. 1987).

In the present case, the first subpoena required the production of certain documents "forthwith." USMC produced the documents to the State's Attorney's office, which placed them in the public court file. This occurred without the knowledge of defendant or the court, and without an opportunity for the court to review the documents' relevancy, materiality, or privileged nature.

The second subpoena, however, called for the production of the records in a *sealed condition* to the trial court. While the first subpoena might have violated the standard set forth in *Fisher*, the second subpoena did not; instead, it provided the court the opportunity to determine the relevancy and confidentiality of the records.

In making its ruling, the trial court also relied on the proceedings in People v. Smith (Cir. Ct. Vermilion Co.), No. 92—CF—32, in which (in an unrelated case) the same trial court suppressed evidence obtained through a subpoena suffering the same infirmities as the first subpoena in this case. When the trial court made its decision in this case, the Smith appeal was pending before this court. Although we ultimately affirmed the trial court's suppression order (see *Smith*, 259 Ill. App. 3d at 504, 631 N.E.2d at 745), the present case is distinguishable from *Smith*.

In *Smith*, a subpoena was served on the defendant at her home, commanding her to produce "forthwith" all documents relating to the case under investigation. In the subpoena, the State sought all relevant documents from the defendant personally, not —as here— certain specific documents already known to the State. The subpoena in *Smith* was akin to a search warrant, requiring the defendant to search her home and business "forthwith" at the order of the State. That is not the situation here.

In the present case, the second subpoena served upon USMC called for production of specific information known to the State: the results of the blood-alcohol test performed as part of the emergency

medical treatment of defendant. Without question, this kind of evidence is both discoverable and admissible at trial. Section 11—501.4(b) of the Code (625 ILCS 5/11—501.4(b) (West 1992)) specifically provides for production of blood-alcohol test results, notwithstanding any claims of confidentiality. The State was attempting to obtain evidence it knew existed. This evidence was not privileged, and the subpoena was not an improper attempt to obtain evidence to which the State was not entitled.

The usual—and appropriate—procedure for use of a subpoena *duces tecum* is for the party seeking documents to serve the person having control of (or access to) those documents with a subpoena requiring that person to appear before a judge (or grand jury) at a specific date, time, and place. If the subpoena is returnable in open court, the case from which the subpoena arose should be scheduled for a hearing of any kind (including simply the return of the subpoena), or the trial court in its discretion may choose to permit the return of the subpoena even if the case had not been scheduled. When the subpoenaed person appears, the party calling him should inform the court of the purpose of his presence and ask leave of court to take the subpoenaed materials from that person for use in court that day or at some later proceedings. Before granting that request, the court could ask the opposing party or any other person with a legitimate interest whether any objection exists. If an objection is raised, the court could then address it before releasing the subpoenaed material.

This "usual procedure" affords all interested parties the protections described in *Fisher* and *Smith*. The procedures surrounding the second subpoena in this case were more akin to the "usual procedures" than to the infirmities present with the first subpoena. We note that the only essential differences between the second subpoena in the present case and the "usual procedures" are that here (1) the documents sought were put before the court in a sealed condition prior to any hearing on the case they concerned, and (2) no person appeared in open court to deliver the documents on the day the trial court considered the propriety of the second subpoena. Although we do not approve of the irregular procedures the State employed regarding the second subpoena, we conclude nonetheless that—in this case—these irregularities affected no fundamental rights of defendant and should not be the basis for sanctions.

This case is also distinguishable from *People v. Kaiser* (1992), 239 Ill. App. 3d 295, 303, 606 N.E.2d 695, 700, in which the court affirmed the suppression of blood tests obtained through the use of a second subpoena after an initial use of an improper subpoena. In *Kaiser*, the

State was not aware of the blood tests until it improperly subpoenaed "any and all [of the defendant's] medical" records. The court found the State's first subpoena nothing more than a "fishing expedition" to examine privileged records. After learning of the blood tests from the records produced, the State subpoenaed them a second time. The court held that suppression was a proper sanction, in part, because the evidence was revealed as a result of the improper initial subpoena. In the present case, the record shows that the State knew that a blood-alcohol test had been run regarding defendant. Because the State did not use the first subpoena as a "fishing expedition" to learn of the evidence, *Kaiser* does not apply.

Defendant further argues that "in the instant case, the State was no more entitled to the defendant's medical records than they were in *Kaiser*, without the authority that would be obtained through the proper use of the subpoena process." This argument is without merit. In *Kaiser*, the records requested were protected by the Mental Health and Developmental Disabilities Confidentiality Act (see 740 ILCS 110/1 *et seq.* (West 1992)). The law is clear in this State that when a blood-alcohol test is performed in the regular course of emergency medical treatment and the elements of section 11—501.4 of the Code are satisfied, the test results are not hearsay, and the documents containing those results are not protected by privilege. The State possessed the authority to obtain this evidence, and its doing so does not indicate that the State acted in bad faith.

The trial court in the present case, relying on *People v. Walley* (1991), 215 Ill. App. 3d 971, 575 N.E.2d 596, also found that the State should have been on notice that a subpoena which allows for the extrajudicial production of documents is improper. However, the facts in *Walley*, a case affirming the suppression of evidence, are distinguishable from those in this case.

In *Walley*, the subpoena stated that it could be complied with by " 'providing legible copies of the documents requested *** to the authorized agent serving [the] subpoena.' " (*Walley*, 215 Ill. App. 3d at 972, 575 N.E.2d at 597.) The trial court quashed the subpoena and ordered any evidence obtained therefrom suppressed. The appellate court affirmed, in part because the State was clearly on notice that its subpoena process was improper. (*Walley*, 215 Ill. App. 3d at 975, 575 N.E.2d at 598-99.) Part of the appellate court's ruling in *Walley* stemmed from an earlier case, *People v. Hart* (1990), 194 Ill. App. 3d 997, 552 N.E.2d 1, involving the same prosecutor (the De Kalb County State's Attorney's office). In *Hart*, the trial court informed the De-Kalb County State's Attorney's office that the subpoena process it had used was improper. Yet, in *Walley*, the prosecutor used the same

subpoena process again. In this case, however, the State had not previously been informed by the trial court that the process it used was improper. Thus, the bad faith the State exhibited in *Walley* is absent here.

Defendant also argues that the State does not have the authority to determine which documents are relevant and subject to subpoena. He contends that this power resides with the courts. We disagree and note that in the present case, the State's Attorney could have issued the same subpoena in the name of the Vermilion County grand jury, and the records in question would then have been returnable to the grand jury on a day it was in session, to be considered and reviewed by it (and the State's Attorney's staff appearing before the grand jury) without the intervention of the court. See 725 ILCS 5/112—4(b) (West 1992).

### III. CONCLUSION

For the reasons stated, we reverse the trial court's suppression of the evidence obtained through the second subpoena, and we remand this case for further proceedings.

Reversed and remanded for further proceedings.

KNECHT and LUND, JJ., concur.