THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GRANT E. NOHREN, Defendant-Appellee.

Fourth District   No. 4—96—0129

Opinion filed September 25, 1996.

GREEN, J., specially concurring.

Richard L. Broch, State's Attorney, of Tuscola (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Andrea Georgelos (argued), of Lerner & Kirchner, of Champaign, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Following a one-car accident with injuries in October 1995, defendant Grant Nohren was issued citations for improper lane usage, illegal transportation of alcoholic liquor, and failure to wear a seat belt. 625 ILCS 5/11—709, 11—502, 12—603.1 (West 1994). Prior to charging defendant with driving under the influence (DUI) (625 ILCS 5/11—501 (West 1994)), the State caused a subpoena *duces tecum* to be issued for the results of blood-alcohol tests performed on defendant on the night in question. Defendant objected when the State made a motion to view the subpoenaed records, and the trial court denied the State's motion to view. The State then filed its notice of impairment, and this interlocutory appeal followed, pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)). On appeal, the State argues the trial court abused its discretion in denying the motion, contending that there was nothing improper in subpoenaing defendant's records prior to charging him with DUI and that the records were not otherwise privileged. We agree and reverse.

The facts of this matter are not disputed. According to the police report, at approximately 1:20 a.m. on October 8, 1995, the Douglas County sheriff's dispatcher received a report of a one-car accident which had occurred in Douglas County. Douglas County sheriff's deputy Dustin Morgan was dispatched to the scene of the accident and received backup support from Officers Milton Wyrick and James Nees of the Tuscola police department. When Morgan arrived at the scene, he observed defendant's 1992 Mitsubishi sitting upside down off the roadway. Two males were lying on the ground 30 yards from the car, and a female was lying behind the vehicle. Morgan asked the female lying on the ground, Angela Long, about the accident, and Long replied she had no knowledge of how the accident had occurred.

Long acknowledged that everyone in the car had been drinking before the accident.

Morgan was then approached by a second female, Leigh Boyce, who also claimed to have been a passenger in the car. She informed Morgan she and the other occupants of the car had been in Mattoon earlier and had been drinking. She stated that they were returning home when the driver, Nohren, lost control of the car while attempting to maneuver through a curve. Boyce identified one of the men lying on the ground as Andrew Hardin. Morgan tried to speak with defendant but could not get a response from him. An ambulance arrived and transported all of the car's occupants to Carle Hospital in Urbana.

Morgan remained at the scene to investigate the accident. He observed a blue and white cooler lying next to the car. The cooler contained fourteen 12-ounce Bud Light beer cans, one of which was opened. Morgan noted a strong odor of alcoholic beverages emanating from the inside of defendant's automobile.

At 6:45 p.m. on the same day, Morgan went to Carle Hospital. While there, he asked an emergency room nurse whether blood had been drawn from defendant earlier and was advised that blood had indeed been drawn. Morgan then questioned Long about the accident. Long told Morgan she had gone with the three others to a tavern in Mattoon at approximately 9 p.m. The four left the tavern at almost 1 a.m. According to Long, defendant had been drinking Bud Light that night, although she was unsure how much he had consumed. When they left the tavern, defendant was driving at a high rate of speed prior to the accident. Long could not recall the details of the accident. Morgan then tried to speak with Hardin, but Hardin was in surgery at the time.

Morgan next went to defendant's residence to speak with defendant. Defendant's version of events was identical to that of Long. Defendant admitted to Morgan that he had consumed alcohol before attempting to drive home that night. Defendant admitted he was driving in excess of 55 miles per hour prior to the wreck. Defendant claimed he had turned to say something to one of the girls prior to losing control of the car. When asked whether he thought he was "under the influence" at the time the accident occurred, defendant lowered his head, looked down at the table, and replied, "I don't know."

Boyce's statement was not significantly different from that of defendant and Long. Boyce denied drinking that night and said that if anyone in the car was drinking that night, it was defendant.

Morgan issued defendant traffic citations for improper lane us-

age, illegal transportation of alcoholic liquor, and failure to wear a seat belt. 625 ILCS 5/11—709, 11—502, 12—603.1 (West 1994). On October 19, 1995, the State caused the clerk of the circuit court to issue a subpoena *duces tecum* upon the records custodian at Carle Hospital. The subpoena called for production of defendant's blood-alcohol test results for the dates October 7 through October 9 for a hearing before Judge Frank Lincoln on November 27. Compliance could be accomplished by sending the medical records directly to the court, and the subpoena specifically stated that the records were not to be sent to the State's Attorney's office. The records arrived and bore a circuit clerk file stamp of November 20.

On November 29, the State filed a motion to view the subpoenaed medical records. Defendant objected to this motion, and a hearing was set for December 19. At that hearing, defense counsel argued that the subpoenaed materials were privileged and not relevant to the pending charges, as defendant had yet to be charged with DUI (625 ILCS 5/11—501 (West 1994)). The trial judge stated he was inclined to deny the State's motion, but he declined to make a final ruling. The matter was recessed until January 9, 1996, and counsel were given additional time to submit authority in support of their respective positions. The subpoenaed documents were ordered sealed and returned to the court file.

On December 28, 1995, the State charged defendant with DUI. On January 9, defendant renewed his objections to the State's motion to view the subpoenaed materials. The matter was continued until February 13, 1996, and that date was also selected as the date for the preliminary hearing on the DUI charge. On February 13, the trial court denied the State's petition without giving a basis for its decision. The State then filed its notice of impairment, and this appeal followed.

Since the trial court gave no basis for its decision, we examine the arguments made below and on appeal by defendant in objecting to the State's motion to view his blood-alcohol test results: (1) the subpoenaed records were not relevant to the charges pending against defendant at the time the subpoena *duces tecum* was issued; (2) Deputy Morgan "tainted" the records when he asked a hospital nurse whether defendant's blood had been drawn; (3) the records were privileged; (4) no exception applied to permit revelation of his test results; and (5) the subpoena was overly broad because it was made applicable to any tests on the three days October 7 through October 9.

The trial judge at one point in the proceedings stated he was inclined to deny the State's motion since he was unsure whether

such "material *** can be discovered by the State when [the court] do[es] not have a DUI charge or reckless homicide charge on file." If this was, in fact, the basis of the trial court's decision, the denial of the State's motion cannot be sustained on this ground.

■ Although we address defendant's argument on this point, we note the argument is significantly weakened by the fact that a DUI charge *was* pending against defendant at the time the trial court made its final ruling on the State's motion to view defendant's records. Regardless, the pendency of a particular charge does not affect the investigative powers of the State's Attorney. Defendant has cited no cases, either to this court or to the trial court, which hold that the State may not use the subpoena *duces tecum* to investigate a crime for which a defendant has not been charged at the time the subpoena is issued. To the contrary, a public prosecutor not only has the power but also has an affirmative duty to investigate criminal activity. Section 3—3.1 of the Standards for Criminal Justice, authored by the American Bar Association, defines the role of the prosecutor and specifically states:

> ˙ "A prosecutor ordinarily relies on police and other investigative agencies for investigation of alleged criminal acts, but the prosecutor has an *affirmative responsibility to investigate suspected illegal activity* when it is not adequately dealt with by other agencies." (Emphasis added.) ABA Standards for Criminal Justice § 3—3.1(a), at 47 (3d ed. 1993).

See also *People v. Williams*, 147 Ill. 2d 173, 256, 588 N.E.2d 983, 1017 (1991). It is the duty of the State's Attorney to investigate facts and determine whether an offense has been committed. *Williams*, 147 Ill. 2d at 256, 588 N.E.2d at 1017; *McDonald v. County Board*, 146 Ill. App. 3d 1051, 1055, 497 N.E.2d 509, 512 (1986); *Ware v. Carey*, 75 Ill. App. 3d 906, 913-14, 394 N.E.2d 690, 694 (1979). The State's Attorney has wide discretion in enforcing the criminal laws of Illinois. *Williams*, 147 Ill. 2d at 256, 588 N.E.2d at 1017; *Marcisz v. Marcisz*, 65 Ill. 2d 206, 210, 357 N.E.2d 477, 480 (1976). The State's Attorney is possessed of this discretion and charged with these duties prior to the filing of formal accusations by the State. *Ware*, 75 Ill. App. 3d at 914, 394 N.E.2d at 694-95; *cf. Scott v. Ass'n for Childbirth at Home, International*, 88 Ill. 2d 279, 293, 430 N.E.2d 1012, 1019 (1981) (validity of administrative subpoena does not depend on pendency of a formal charge or probable cause to believe a violation has occurred). The State's Attorney is authorized by statute in Illinois to make use of the subpoena power in conducting investigations. See 55 ILCS 5/3—9005(b) (West 1994) ("[t]he State's Attorney of each county shall have authority to appoint one or more special investigators to serve

subpoenas, make return of process and conduct investigations which assist the State's Attorney in the performance of his duties"); see also ABA Standards for Criminal Justice § 3—2.4(b), at 28 (3d ed. 1993) ("Funds should be provided to the prosecutor for the employment of a regular staff of professional investigative personnel and other necessary supporting personnel, under the prosecutor's direct control, to the extent warranted by the responsibilities and scope of the office"). If the State's Attorney did not have such investigative power, it would lead to the perverse result that the State must formally charge an individual prior to investigating the factual basis for the charge.

■ A second problem with defendant's argument is that the validity of a subpoena *duces tecum* is not judged at the time the subpoena is *issued*. Section 115—17 of the Code of Criminal Procedure of 1963 authorizes the issuance of subpoenas and contains no requirement that a charge be pending at the time of issuance. That section states only that "[i]t is the duty of the clerk of the court to issue subpoenas, either on the part of the people or of the accused." 725 ILCS 5/115—17 (West Supp. 1995). The legislature has demonstrated an ability to limit the issuing of subpoenas such that an action must be pending prior to issuance. See 735 ILCS 5/2—1101 (West 1994) (stating that, in civil matters, "[t]he clerk of any court in which an action is pending shall *** issue subpoenas").

■ As the use of a subpoena is a judicial process, subpoenaed material must be sent directly to the court and not to the party who caused the subpoena to issue. *People ex rel. Fisher v. Carey*, 77 Ill. 2d 259, 265, 396 N.E.2d 17, 19 (1979). The court, *in camera*, must then resolve issues of relevance, materiality, and privilege, in addition to claims of unreasonableness or oppressiveness (see *Carey*, 77 Ill. 2d at 265, 396 N.E.2d at 19-20), prior to allowing the moving party to view the subpoenaed material.

■ Accordingly, it is clear the State's Attorney did nothing improper which would justify denying the State's motion to view defendant's blood-alcohol test results. Procedurally, the process employed by the State was unquestionably proper. The subpoena was made returnable to the trial court and specifically stated that it was not to be returned to the State's Attorney's office. We find especially important the fact that once defendant's blood-alcohol test results were delivered to the court, the State notified defendant and his attorney that it had filed a motion to view those records. See *People v. Hathaway*, 263 Ill. App. 3d 426, 429, 635 N.E.2d 148, 149-50 (1994) (noting the "opportunity for judicial examination of the [subpoenaed] material, along with the opportunity to challenge the subpoena, either when served or when presented in court, is one of the justifica-

tions for the subpoena exception to the probable cause requirements of the fourth amendment"). We note the State's Attorney could have issued the same subpoena in this case in the name of the grand jury. The records then could have been reviewed by the grand jury and staff of the State's Attorney's office without court intervention. See *Hathaway*, 263 Ill. App. 3d at 432, 635 N.E.2d at 151-52.

Moreover, defendant cannot reasonably claim that the State was engaged in a "fishing expedition" in seeking the results of defendant's blood-alcohol test (see *Carey*, 77 Ill. 2d at 269, 396 N.E.2d at 21) or that the State's Attorney was proceeding other than in good faith in investigating defendant for DUI. Prior to causing the subpoena to issue, the State had probable cause to believe that defendant was DUI on the night in question. Defendant was the driver of a car involved in a one-car accident which occurred either late Saturday night or very early Sunday morning. Defendant and the other occupants in the car had been in a tavern for several hours prior to the accident. Defendant, by his own admission, consumed alcohol prior to the accident, and the other occupants of the car confirmed this fact. Defendant responded with a dejected "I don't know" when asked by Deputy Morgan whether he was DUI that night. Morgan smelled alcohol inside the car following the accident, and a cooler full of beer was found near defendant's car. Compare *People v. Kaiser*, 239 Ill. App. 3d 295, 296, 606 N.E.2d 695, 696 (1992) (finding the State, having no knowledge that the defendant's blood-alcohol level had even been tested, was on a "fishing expedition" when it improperly subpoenaed " '[a]ny and all [of the defendant's] medical records' " and thereby learned of the blood-alcohol tests following defendant's mental evaluation), with *Hathaway*, 263 Ill. App. 3d 426, 635 N.E.2d 148 (holding the State was not on a "fishing expedition" when it subpoenaed the results of the defendant's blood-alcohol tests, where the State was aware the tests had been performed in the course of medical treatment following his one-car accident), and *People v. Wilber*, 279 Ill. App. 3d 462, 664 N.E.2d 711 (1996) (finding no "fishing expedition" where, although the State improperly used a search warrant to obtain blood-alcohol test results, there was no evidence the State was not aware of the tests prior to its extrajudicial review of them).

In support of his contention that the State was engaged in a "fishing expedition" when it subpoenaed his blood-alcohol test results, defendant claims the State would not have been aware of the tests if not for the actions of Deputy Morgan in asking a hospital nurse whether defendant's blood had been drawn. We disagree. Here the State would have had every reason to believe defendant's blood was tested for alcohol at Carle Hospital, given the plethora of other evidence that defendant was DUI on the night in question.

■ In a related argument, defendant suggests Deputy Morgan acted improperly in inquiring of a hospital nurse whether blood had been drawn from defendant. According to defendant, this action violated the health care practitioner-patient privilege (see 735 ILCS 5/8—802 (West 1994)), thereby "tainting" the results ultimately obtained by the State. Since we have found that the State would have been aware of the probable existence of blood tests absent the minimal information gleaned by Deputy Morgan, resolution of this point is not essential to the conclusion we reach in this case. Even were we to address it, we find nothing significantly improper in Morgan asking such a routine question in the course of his investigation, considering he inquired only into the existence of the test and not the test results themselves. *Cf. People v. Dean*, 126 Ill. App. 3d 631, 467 N.E.2d 353 (1984) (finding no violation of physician-patient privilege where physician testified as to what medication he had prescribed for the defendant, where the defendant was accused of altering his prescription). Assuming, *arguendo*, impropriety, such impropriety would be *de minimis* in nature and would not require sanction by the trial court. Compare *Mahan v. Louisville & Nashville R.R. Co.*, 203 Ill. App. 3d 748, 561 N.E.2d 127 (1990) (finding that defense counsel's *ex parte* communication with treating physician was *de minimis* and did not disclose private or confidential information regarding the patient where discussion lasted only 30 seconds and concerned the patient's CT scans and their relevancy to the patient's treatment), with *Burns v. Michelotti*, 237 Ill. App. 3d 923, 604 N.E.2d 1144 (1992) (finding any *ex parte* communication between defense counsel and treating physician, regardless of what information is actually revealed, to be improper and sanctionable, although where communication is of *de minimis* nature a court may refuse to impose sanctions in its discretion). We note also that this result is consistent with newly enacted section 11—501.4—1 of the Illinois Vehicle Code (Vehicle Code) (see Pub. Act 89—517, § 10, eff. January 1, 1997 (adding 625 ILCS 5/11—501.4—1) (1996 Ill. Legis. Serv. 2239, 2243 (West) (stating "the *results* of blood or urine tests performed for the purpose of determining the content of alcohol, other drugs, or both, in an individual's blood or urine conducted upon persons receiving medical treatment in a hospital emergency room for injuries resulting from a motor vehicle accident *may be reported to the Department of State Police or local law enforcement agencies*" (emphasis added))), which suggests this result is not inconsistent with the legislative intent behind section 11—501.4 (625 ILCS 5/11—501.4 (West 1994)).

■ Defendant further argues his test results were privileged and

no exception to the privilege applies to permit the State to view the subpoenaed material. However, at least two exceptions to the health care practitioner-patient privilege apply in this case. Sections 8—802(4.1) and (9) of the Code of Civil Procedure (Code) set forth the privilege and two of its exceptions:

"No physician, surgeon, psychologist, nurse, mental health worker, therapist, or other healing art practitioner (referred to in this Section as 'healthcare practitioner') shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient, except only *** (4.1) in all actions brought against the patient, his or her personal representative, a beneficiary under a policy of insurance, or the executor or administrator of his or her estate wherein the patient's physical or mental condition is an issue, *** [or] (9) in prosecutions where written results of blood[-]alcohol tests are admissible pursuant to Section 11—501.4 of the Illinois Vehicle Code ***." 735 ILCS 5/8—802(4.1),(9) (West Supp. 1995).

The exception of section 8—802(4.1) is clearly applicable to the State's motion to view in this case, as a DUI is an "action[ ] brought against the patient" in which the patient's physical or mental condition is an element of the offense and therefore at issue. See *People v. Krause,* 273 Ill. App. 3d 59, 62, 651 N.E.2d 744, 746 (1995); *Wilber,* 279 Ill. App. 3d at 468, 664 N.E.2d at 715. The section 8—802(9) exception is applicable as well. Defendant was charged with DUI, which is a prosecution for a violation of section 11—501 of the Vehicle Code (625 ILCS 5/11—501 (West 1994)). Hence, his blood tests were admissible under section 11—501.4 of the Vehicle Code, and section 8—802(9) of the Code permits disclosure of defendant's blood-alcohol tests in this situation.

Defendant's argument that neither exception applies in this case is premised on the fact that he was not charged with DUI at the time the subpoena *duces tecum* was issued. The proper focus of the inquiry, however, is on the *final* hearing on the State's motion to view the subpoenaed records, and a DUI charge *was* then pending against defendant. Section 8—802(4.1) of the Code refers to all "actions" brought against the patient, while section 8—802(9) of the Code refers to "prosecutions" against a patient. Defendant's pending DUI charge was both an "action" and a "prosecution," making both exceptions to the privilege applicable. Even absent the DUI charge, defendant interprets "actions" and "prosecutions" too narrowly. *Cf. Sisters of the Third Order of St. Francis v. People ex rel. Barra,* 151 Ill. App. 3d 875, 878, 503 N.E.2d 1069, 1071-72 (1987) (interpreting "in trials for

homicide" exception of section 8—802 to apply to all preliminary and subsequent proceedings, such as a grand jury proceeding, commenced in contemplation of a homicide trial).

■ Defendant relies on two cases as support that Morgan violated the health care practitioner-patient privilege and thereby "tainted" the subpoenaed materials, *Village of Arlington Heights v. Bartelt*, 211 Ill. App. 3d 747, 570 N.E.2d 668 (1991), and *Kaiser* (239 Ill. App. 3d 295, 606 N.E.2d 695). *Bartelt* involved a situation in which a hospital nurse volunteered the results of the defendant's blood test to the police officer investigating the defendant's accident. *Bartelt*, 211 Ill. App. 3d at 748, 570 N.E.2d at 670. The *Bartelt* court held that this disclosure violated the physician-patient privilege, and, since probable cause to arrest the defendant was based solely on this "tainted" evidence, the court affirmed the quashing of the defendant's arrest. *Bartelt*, 211 Ill. App. 3d at 750, 570 N.E.2d at 671. Assuming we agree with the result reached in *Bartelt*, *Bartelt* is easily distinguished from the matter now before us. *Bartelt* involved the disclosure of privileged medical records in a manner not judicially authorized. Here, in contrast, the privilege was inapplicable to the subpoenaed documents, and there was nothing improper about the procedure the State employed to access defendant's blood test results. While in *Bartelt* the officer learned of the *results* of the defendant's blood test, Deputy Morgan learned nothing more in the present case than the fact that a blood-alcohol test had been performed on defendant.

*Kaiser* is likewise distinguishable. In *Kaiser*, the State subpoenaed all of defendant's medical records and made the records returnable to the State's Attorney's office. No *in camera* inspection of the records was provided to determine whether the records were privileged. *Kaiser*, 239 Ill. App. 3d at 296, 606 N.E.2d at 696. The State, after having reviewed the improperly obtained records and learning the defendant's blood had been tested for alcohol, issued a second, proper subpoena for the defendant's blood tests. *Kaiser*, 239 Ill. App. 3d at 300-01, 606 N.E.2d at 699. The trial court suppressed the subpoenaed records. The appellate court affirmed on the basis that the first improper subpoena "tainted" the records eventually obtained by the State. *Kaiser*, 239 Ill. App. 3d at 303, 606 N.E.2d at 700. Here there was no improper action, either by Deputy Morgan or the State, which could have tainted the records sought. The trial court's decision cannot be sustained on this basis.

■ Finally, defendant has suggested that the subpoena *duces tecum* was overbroad. However, he has cited no authority to this court or the trial court in support of this contention. We cannot

agree that the subpoena here, which requested defendant's blood tests and specified the time period October 7 through October 9, 1995, was overbroad. The State did not request all of defendant's medical records, and there may have been some uncertainty as to whether the accident occurred late on October 7 or early on October 8.

For the reasons stated, we reverse the judgment of the circuit court.

Reversed.

McCULLOUGH, J., concurs.

JUSTICE GREEN, specially concurring:

I concur in the decision to reverse the circuit court's order denying the State's motion to view the evidence obtained through the subpoena *duces tecum*. I do so on the basis, well stated by the majority, that by the time of hearing a proper DUI charge had been filed with the circuit court. The following of the *Carey* and *Hathaway* procedures prevented a disclosure of privileged information until the filing of the DUI charge created an exception to the privilege and a basis for the subpoena.

I cannot agree that the general powers and duties in regard to investigation by the State's Attorney imply that when no criminal charge is pending, the State's Attorney has any power to obtain a subpoena *duces tecum* in any way other than through the procedure of a grand jury subpoena. The majority cites no direct authority for the existence of such a subpoena. I am aware of none and I assume such authority would exist if such a subpoena could be obtained. If a State's Attorney could obtain a subpoena for investigative purposes, the grand jury subpoena would be significant only when the grand jury wished to seek information the State's Attorney was unwilling to seek.