**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted May 11, 2006[*]
Decided June 26, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

No. 05-3279

| | |
|---|---|
| JAMES NEUMAN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois |
| | |
| *v.* | No. 04-1021 |
| | |
| PEORIA COUNTY POLICE | Joe Billy McDade, |
| DEPARTMENT et al., | *Judge.* |
| *Defendants-Appellees.* | |

**O R D E R**

James Neuman filed a suit against the Peoria County Police Department and five individuals, including a state court judge, apparently alleging a violation of his federal civil rights under 42 U.S.C. § 1983, as well as other state law causes of action.[1]  The district court rejected the main claims—false arrest and denial of

---

[*]  After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* Fed. R. App. P. 34(a)(2).

[1] The County suggests that the Department is not a legal entity which can be

(continued...)

access to the courts—as well as several others in the complaint. Neuman appeals, and we affirm.

In January 2003 Neuman appeared before Judge Brian Nemenoff of Peoria County regarding a small claims case that Neuman filed. While he spoke to the courthouse bailiff—apparently to voice his complaint that his case had been delayed while Judge Nemenoff heard matters pertaining to criminal cases—Officer Larry Ryan and then-Officer Tim Fuller approached him to determine whether he was the same James Neuman who was wanted on an outstanding arrest warrant. When asked for his date of birth, Neuman reportedly responded that he did not have his driver's license and refused to provide his date of birth, and the officers arrested him pursuant to the warrant.

The officers, after a police dispatcher radioed the date of birth of the James Neuman named on the warrant, quickly determined that the Neuman they arrested was younger than the 45-year-old they were seeking. Rather than release him, however, the officers changed the charge to obstruction of justice, because he had refused to provide his date of birth. James Neuman was taken into custody, held for four hours (during which he alleges that Fuller taunted him by laughing and waving at him), and released. Prosecutors did not pursue the obstruction of justice charge.

Two months before commencing the suit at issue in this appeal, Neuman delivered two subpoenas to Jim Ludolph, Director of Courthouse Security and Civil Process Server Supervisor for the Peoria County Sheriff, requesting courthouse video surveillance tapes, and asked that they be served. Ludolph, however, rejected the subpoenas because they were not related to a pending matter; Neuman was neither charged with a crime nor a party to a state civil suit.

Neuman filed this civil suit in district court in January of 2004. We recount the claims ultimately resolved by the court. Initially, Neuman alleged that Judge Nemenoff committed error when dismissing his small claims case and further erred when he delayed consideration of his case to attend to criminal matters. Second, he argued that Officer Ryan wrongfully arrested him pursuant to the outstanding arrest warrant. Third, he claimed that Officers Ryan and Fuller wrongfully arrested him for obstruction of justice. Finally, he asserted that Ludolph wrongfully rejected the subpoenas that he attempted to have the police department serve.

---

[1](...continued)
sued. Resolution of this argument is unnecessary given our disposition of the case.

On June 8, 2004, the court dismissed all of the claims lodged against Sheriff Michael McCoy in his official capacity and Judge Nemenoff. The court reasoned that the allegations against McCoy were insufficient to hold him liable under the doctrine of *respondeat superior* and that the claims against Judge Nemenoff were attacks on a state court judgment barred under the *Rooker-Feldman* doctrine. In the same order, the court dismissed the first false arrest claim against Officer Ryan because Neuman failed to challenge the validity of the outstanding warrant.

On September 3 the court dismissed Neuman's second false arrest claim—that Officers Ryan and Fuller arrested him for obstruction of justice without probable cause. It reasoned that Neuman's failure to provide his date of birth impeded the officers' ability to investigate whether they had located the James Neuman charged in the warrant of arrest. Finally, the court granted summary judgment for Ludolph because all of the affiants—Ludolph, Stefani Quasti (a charging legal assistant for the Peoria County State's Attorney), and Robert Spears (the Peoria County Circuit Clerk)—stated that no criminal charges had been filed against Neuman. The court, citing *People v. Craft*, 289 N.E.2d 246 (Ill. App. Ct. 1972), reasoned that because a subpoena must be related to an underlying case, the subpoenas Newman delivered to Ludolph were not valid under Illinois state law. Accordingly, Ludolph could not have erred by refusing to accept the subpoenas.

Neuman's appellate brief is confusing, but according to our reading two issues transcend. Initially, Neuman asserts that the district court incorrectly granted summary judgment for Ludolph because his failure to accept Neuman's subpoenas denied Neuman access to the courts. We review the district court's decision *de novo*, construing all facts and reasonable inferences in Neuman's favor. *See Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006). Second, he argues that the court wrongly dismissed the claims against Officers Ryan and Fuller because, he contends, the officers failed to present sufficient evidence to establish probable cause to arrest him for obstruction of justice. We review this dismissal *de novo* as well, but accept as true Neuman's allegations. *See Yasak v. Ret. Bd. of Policemen's Annuity and Benefit Fund of Chicago*, 357 F.3d 677, 678 (7th Cir. 2004).

We begin with Ludolph's rejection of Neuman's subpoenas. Under Illinois law, the clerk of court must issue a subpoena requested by a party to a pending civil matter, 735 Ill. Comp. Stat. 5/2-1101, or on behalf of the state or the accused in a criminal matter, 725 Ill. Comp. Stat. 5/115-17. *See People v. Nohren*, 670 N.E.2d 1208, 1212 (Ill. App. Ct. 1996). Neuman, however, was neither a party to a pending civil action nor the accused in a criminal matter, and therefore he could not provide a case number under which to serve the subpoenas. Accordingly, the subpoenas were not valid under state law and Ludolph was not under any obligation to act on them. Likewise, Neuman did not have a right under state law to initiate a civil action by serving subpoenas, *see N. Shore Sanitary Dist. of Lake County v. Ill. State*

*Labor*, 553 N.E.2d 55, 57 (Ill. App. Ct. 1990). Moreover, his inability to have the subpoenas served did not deprive him of his constitutional right to access to the courts. His Sixth Amendment right to compulsory process, *see United States v. Chapman*, 954 F.2d 1352, 1362 (7th Cir. 1992), would have applied only if the state brought criminal charges, and Ludolph's refusal to accept the subpoenas did not prevent him from commencing a civil law suit.

We turn to Neuman's allegation that probable cause did not support his arrest for obstruction of justice. Probable cause is a defense to a Section 1983 claim for false arrest, *see Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001), and here the officers had probable cause to arrest Neuman. Under Illinois's obstruction of justice statute, 720 Ill. Comp. Stat. 5/31-1, anyone who "knowingly resists or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his official capacity commits a Class A misdemeanor." *See Williams*, 269 F.3d at 782. Interpreting Illinois Supreme Court precedent, we have generally recognized that "'mere silence' in the face of requests [from the police] for identifying information, or even supplying false information, is not enough to constitute obstruction." *Williams*, 269 F.3d at 782; *see also People v. Raby*, 240 N.E.2d 595, 599 (Ill. 1968). An exception exists, however, when an individual's silence prevents an officer from carrying out a duty imposed by court order and by statute. *See Migliore v. County of Winnebago,* 321 N.E.2d 476, 479 (Ill. 1974) (individual commits obstruction when he refuses to identify himself to officers serving process). The exception applies here. Just as officers serving process are under a duty to serve subpoenas in civil matters, the police officers here were bound by statute to execute the warrant for James Neuman's arrest. 725 Ill. Comp. Stat. 5/107-9(e). The officers' duty to execute the warrant gave them reason to believe Neuman was obligated to answer any request for identification. Accordingly, there was probable cause to believe the obstruction of justice law was violated when Neuman refused to identify himself to the officers (by giving his date of birth) as they attempted to execute their warrant of arrest.

Finally, Neuman had no Fourth or Fifth Amendment rights that negated his obligation to answer a question about his identity. *See Hiibel v. Sixth Judicial District Court of Nevada*, 542 U.S. 177 (2004). Hiibel was arrested pursuant to a Nevada law that required him to identify himself during a stop authorized by *Terry v. Ohio*, 392 U.S. 1 (1968). *Hiibel*, 542 U.S. 180-81. The Supreme Court held that a "state law requiring a suspect to disclose his name in the course of a valid *Terry* stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures." *Id*. at 188. Explaining the limit of its holding, the Court observed that "an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop." *Id*. at 188. Here, the officers made a proper request for identification that was reasonably related to a legitimate stop. The officers initially

stopped Neuman pursuant to a valid and unchallenged warrant for the arrest of "James Neuman." And, the officers' request for Neuman's date of birth was designed only to determine if the officers had stopped the correct person. Thus, the Fourth Amendment does not justify his refusal to provide his date of birth.

Finally, the Fifth Amendment does not justify Neuman's refusal to cooperate with the officers. *Hiibel* holds that the Fifth Amendment does not override an obligation to provide one's name to police "absent a reasonable belief that the disclosure would tend to incriminate." *Id.* at 191. Here, the request for Neuman's date of birth—like the request for Hiibel's name—was intended only to establish his identity, and therefore would have been a disclosure "likely to be so insignificant in the scheme of things as to be incriminating only in unusual circumstances." *Id.* at 191. Neuman has not suggested any reason for us to believe his date of birth could have been inculpatory and thus protected by the Fifth Amendment. To the contrary, the entire incident giving rise to this case would likely not have occurred had he cooperated and supplied his date of birth.

Accordingly, on the facts of this case, we hold that Neuman's refusal to provide his date of birth, thereby frustrating the ability of officers to carry out their statutory and court-ordered duty to execute an existing arrest warrant, was not an act protected by the Fourth or Fifth Amendments to the Constitution, particularly given the exculpatory nature of the information requested by the officers. *Id.* at 188, 191. Neuman cannot, therefore, maintain a Section 1983 claim for false arrest and the district court correctly dismissed the claims against Officers Ryan and Fuller.

The remainder of Neuman's arguments are undeveloped and, in any event, are without merit. The decisions of the district court are AFFIRMED.