# Illinois Official Reports

## Supreme Court

---

### *People v. Ringland*, 2017 IL 119484

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CARA M. RINGLAND *et al.*, Appellees. |
| Docket No. | 119484 |
| Filed | June 29, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of La Salle County, the Hon. H. Chris Ryan and the Hon. Daniel J. Bute, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Brian J. Towne, State's Attorney, of Ottawa (Carolyn E. Shapiro and David L. Franklin, Solicitors General, Michael M. Glick and Joshua M. Schneider, Assistant Attorneys General, of Chicago, and Patrick Delfino and Terry A. Mertel, of the Office State's Attorneys Appellate Prosecutor, of counsel), for the People. |
| | Stephen M. Komie and Brian E. King, of Komie & Associates, of Chicago, for appellee Cara Ringland. |
| | Michael J. Pelletier, State Appellate Defender, Peter A. Carusona, Deputy Defender, and Dimitri Golfis, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee James Saxen. |

Douglas B. Olivero, of Louis E. Olivero & Associates, of Peru, for appellee Steven L. Harris.

George Mueller, of Mueller Anderson & Associates, of Ottawa, for *amicus curiae* Freddy Sizemore, an Individual.

| Justices | JUSTICE FREEMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Karmeier and Justices Thomas, Burke, and Theis concurred in the judgment and opinion. |
| | Justice Garman dissented, with opinion, joined by Justice Kilbride. |

## OPINION

¶ 1 Defendants, Cara Ringland, Steven Pirro, James Saxen, Steven Harris, and Matthew Flynn, were separately charged with felony drug offenses in the circuit court of La Salle County. In each case, a controlled substance was discovered during a traffic stop. These traffic stops were conducted by a special investigator appointed by Brian Towne, then State's Attorney of La Salle County, pursuant to section 3-9005(b) of the Counties Code (55 ILCS 5/3-9005(b) (West 2012)).

¶ 2 The circuit court granted each defendant's motion to quash arrest and suppress evidence. The appellate court affirmed, holding that the conduct of the special investigator exceeded the scope of section 3-9005(b). 2015 IL App (3d) 130523. This court allowed the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Jan. 1, 2015)), and we now affirm the judgment of the appellate court.

¶ 3                                   I. BACKGROUND

¶ 4 Jeffrey Gaither, a special investigator for the La Salle County State's Attorney, conducted a traffic stop against each defendant, beginning with Ringland on January 31, 2012, and continuing through Flynn on March 12, 2013. Each traffic stop occurred on Interstate 80 in La Salle County and resulted in the discovery of a controlled substance. Defendants Ringland, Pirro, and Flynn were each charged with felony possession with intent to deliver cannabis, and defendants Harris and Saxen were respectively charged with felony possession with intent to deliver cocaine and methamphetamine.

¶ 5 Each defendant filed a motion to quash arrest and suppress evidence contending, *inter alia*, that Gaither lacked the authority to conduct a traffic stop. Defendants Ringland, Harris, and Saxen specifically argued that Gaither lacked such authority because Towne failed to comply with section 3-9005(b)'s mandatory procedures in hiring Gaither and, alternatively, that section 3-9005(b) did not authorize Gaither to conduct traffic stops.

- 2 -

¶ 6    The circuit court held a hearing on each motion to suppress. Ringland called Towne and Gaither as witnesses. The other defendants and the State stipulated to the following testimony. Towne testified that in late 2011, he formed a team of special investigators, which he named the State's Attorney's Felony Enforcement (SAFE) unit. According to Towne: "Basically I was looking to have a drug interdiction team primarily on Interstate 80 with officers who had previous extensive experience in drug interdiction on Interstate 80 ***." Towne authorized the SAFE unit to operate on the interstate "[t]hrough the statute for the duties and powers of the State's Attorney." On January 21, 2012, Towne swore in Gaither as a SAFE investigator and "then authorize[d] him to go out and enforce the law." Gaither testified that SAFE investigators "were hired to work on *** I-80 and look for narcotics traffickers and criminals" and "[t]o arrest people who were smuggling narcotics or proceeds from narcotics up and down the interstates in Illinois in La Salle County." Gaither received his paychecks from La Salle County, and he viewed himself "as an employee of the State's Attorney of La Salle County." He never took an oath as a deputy sheriff of La Salle County, and he never took an oath from the county sheriff in any regard. Gaither was provided a Ford Explorer equipped with emergency lights and a video camera. When asked what the purpose of that vehicle was, Gaither answered: "To make traffic stops."

¶ 7    At the suppression hearings for defendants Ringland and Pirro, Gaither further testified that, by prearranged plan, when a SAFE investigator would broadcast the initiation of a traffic stop, a drug-detection canine unit would automatically proceed to that location. Gaither also testified as to the factual circumstances surrounding the traffic stops for defendants Ringland, Pirro, and Saxen at their respective suppression hearings.[1]

¶ 8    The circuit court granted each defendant's motion to suppress. The court ruled that section 3-9005(b) required strict compliance with its background verification procedures prior to Gaither's appointment. According to the court, the statute unequivocally required that Gaither's fingerprints be taken and transmitted to the Illinois State Police, which would examine its records and relate any conviction information to the State's Attorney. The court found that these requirements were not met. For this reason, the court concluded that Gaither lacked the authority to conduct these traffic stops.

¶ 9    The State filed a notice of appeal from each suppression order (Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2006)), and the appellate court consolidated the cases for review. 2015 IL App (3d) 130523, ¶ 6. The appellate court likewise concluded that Gaither lacked the authority to conduct the instant traffic stops. However, the appellate court based its conclusion on a different reason. "Leaving aside the issue of whether the State's Attorney either strictly or substantially complied with the fingerprint requirement of the statute, *** the conduct of both the SAFE unit and Gaither exceeded the scope of section 3-9005(b), rendering the traffic stops and arrests unlawful." *Id.* ¶ 34. For that reason, the appellate court affirmed each suppression order.

_____

[1]Also, Towne and Gaither each testified that the state police already had Gaither's fingerprints on file because Gaither had been employed by the Illinois State Police from 1987 to his retirement in July 2011. Further, the parties in the cases against Pirro, Saxen, Harris, and Flynn stipulated that Gaither's fingerprints had been on file with the Illinois State Police prior to Gaither's appointment and that a background check of Gaither revealed no felony convictions or crimes of moral turpitude. See 55 ILCS 5/3-9005(b) (West 2012).

¶ 10    On August 16, 2015, the Illinois Attorney General, the State's Attorneys Appellate Prosecutor, and Towne filed a petition for leave to appeal on behalf of the State, which we allowed on November 25, 2015.[2] During briefing in this court, Karen Donnelly defeated Towne in the November 2016 general election. On December 1, 2016, Donnelly took office as La Salle County State's Attorney. Additional pertinent background will be discussed in the context of our analysis of the issues.

¶ 11                                    II. ANALYSIS

¶ 12    Before this court, the State assigns error to the appellate court's affirmance of the circuit court's suppression orders. The State contends, *inter alia*, that section 3-9005(b) authorized Towne to create his SAFE unit and empower his special investigators to conduct traffic stops. We apply the two-part standard of review adopted by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). Under this standard, the circuit court's factual findings are upheld unless they are against the manifest weight of the evidence. "The reviewing court then assesses the established facts in relation to the issues presented and may reach its own conclusions as to what relief, if any, should be allowed. Accordingly, the ultimate legal question of whether suppression is warranted is reviewed *de novo*." *People v. Hunt*, 2012 IL 111089, ¶ 22; *People v. Harris*, 228 Ill. 2d 222, 230 (2008). Resolution of this issue requires us to construe the relevant statutory language. Our review is *de novo* also because the construction of a statute is a question of law. *People v. Gutman*, 2011 IL 110338, ¶ 12.

¶ 13    The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. Also, a court presumes that the General Assembly did not intend to create absurd, inconvenient, or unjust results. *People v. Perez*, 2014 IL 115927, ¶ 9; *People v. Hunter*, 2013 IL 114100, ¶ 13.

¶ 14    Section 3-9005(b) of the Counties Code provides in relevant part: "The State's Attorney of each county shall have authority to appoint one or more special investigators to [(1)] serve subpoenas, [(2)] make return of process and [(3)] conduct investigations which assist the State's Attorney in the performance of his duties." 55 ILCS 5/3-9005(b) (West 2012). Section 3-9005(b) expressly limits its investigation authorization to those investigations that assist a State's Attorney in the performance of his or her duties. *Id.* Further, based on its plain language, the appellate court correctly observed that this is an exclusive list (2015 IL App (3d) 130523, ¶ 37), and the State does not argue otherwise before this court.

¶ 15    Towne and Gaither each testified that SAFE investigators did not serve subpoenas, make return of process, or investigate pending cases. Towne further testified that his office had not

_____

[2]We granted Freddy Sizemore, an individual charged under similar circumstances, leave to submit an *amicus curiae* brief in support of defendants. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

opened any investigation concerning Ringland and that she did not come to Towne's attention until after she was arrested.[3] Thus, to be valid, the instant traffic stops, by themselves, must constitute investigations that assist a State's Attorney in the performance of his or her duties.

¶ 16　　The appellate court could not understand "how patrolling Interstate 80, issuing warning tickets, and confiscating contraband can be realistically viewed as 'conducting investigations that assist the State's Attorney with his duties.' The prosecution of drug dealers and traffickers is indisputably a duty of the State's Attorney; outfitting his own drug interdiction unit is not." *Id.* ¶ 42.

¶ 17　　Before this court, the State contends that section 3-9005(b) authorizes the SAFE unit to conduct traffic stops because "State's Attorneys have a duty to investigate suspected illegal activity." In response, defendant Harris contends that the SAFE unit exceeded the scope of its section 3-9005(b) authorization to investigate because the duties of a State's Attorney "involve working in the court system to prosecute offenders, and do not involve acting as a police agency." Resolution of this issue requires discussion of the powers and duties of a State's Attorney.

¶ 18　　The office of State's Attorney is constitutionally established. Ill. Const. 1970, art. VI, § 19; see Ill. Const. 1870, art. VI, §§ 22, 32.[4] A State's Attorney is a state, rather than a county, official. *County of Cook ex rel. Rifkin v. Bear Stearns & Company., Inc.*, 215 Ill. 2d 466, 475 (2005); *Ingemunson v. Hedges*, 133 Ill. 2d 364, 369-70 (1990). Although the State's Attorney provision is located in the judicial article of the 1970 Illinois Constitution, the office of State's Attorney is considered part of the executive branch of government, and State's Attorneys exercise executive powers. *Nelson v. Kendall County*, 2014 IL 116303, ¶¶ 27, 31.

¶ 19　　The State's Attorney provision contains no reference to the powers and duties of the office. Ill. Const. 1970, art. VI, § 19; *Rifkin*, 215 Ill. 2d at 477. Similarly, the 1870 Constitution did not prescribe the specific duties of the State's Attorney. *Ashton v. County of Cook*, 384 Ill. 287, 296-97 (1943). This court has consistently held that the 1870 Constitution conferred upon the State's Attorney common-law powers and duties analogous to those of the Attorney General, which the legislature may add thereto but may not subtract therefrom. See *People ex rel. Kunstman v. Nagano*, 389 Ill. 231, 247-49 (1945); *People ex rel. Courtney v. Ashton*, 358 Ill. 146, 150-51 (1934); *Fergus v. Russel*, 270 Ill. 304, 335-42 (1915) (attorney general). The 1970 Constitution "does not change the common law or statutory duties of State's Attorneys." ILCS Ann., 1970 Const., art. VI, § 19, Constitutional Commentary, at 234 (Smith-Hurd 2006); see *Rifkin*, 215 Ill. 2d at 478 ("The State's Attorney's powers are analogous to and largely coincident with those of the Attorney General and it follows, therefore, that the legislature may not usurp those constitutionally derived powers."). Thus, although the powers of State's

---

[3]Gaither further testified that Ringland's arrest had nothing to do with serving subpoenas, making return of process, or investigating pending cases.

[4]The office of State's Attorney was first established in the 1848 Illinois Constitution (Ill. Const. 1848, art. V, §§ 21, 22, 28). However, the 1848 Constitution indicated "an uncertainty as to the nature and scope of the office by providing for an election in each judicial circuit with authorization in the legislature to substitute for that office the office of county attorney in each county, an authority which was never exercised." George D. Braden & Rubin G. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 379 (1969). "The 1870 Constitution established the present pattern of the election of a state's attorney in each county with a four-year term." *Id.*

Attorneys are constitutionally established, legislation and case law prescribe certain duties. *People ex rel. Alvarez v. Gaughan*, 2016 IL 120110, ¶ 30; see *Fergus*, 270 Ill. at 336 (attorney general).

¶ 20   Section 3-9005(a) prescribes certain powers and duties of the State's Attorney. "The duty of each State's attorney shall be" (55 ILCS 5/3-9005(a) (West 2012)): to commence and prosecute all actions, suits, indictments, and prosecutions, civil and criminal, in the circuit court for his or her county, in which the people of the State or county may be concerned and all actions and proceedings brought by any county officer in his or her official capacity (55 ILCS 5/3-9005(a)(1), (a)(3) (West 2012)); to prosecute charges of felony or misdemeanor, for which the offender is required to be recognized to appear before the circuit court (55 ILCS 5/3-9005(a)(6) (West 2012)); to prosecute all forfeited bonds and recognizances and all actions and proceedings for the recovery of debts, revenues, moneys, fines, penalties, and forfeitures accruing to the State or his or her county or to any school district or road district in the county; to prosecute all suits in the county against railroad or transportation companies, which may be prosecuted in the name of the People of the State of Illinois (55 ILCS 5/3-9005(a)(2) (West 2012)); to defend all actions and proceedings brought against his or her county, or against any county or State officer, in an official capacity, within the county (55 ILCS 5/3-9005(a)(4) (West 2012)); to attend the examination of all persons brought before any judge on *habeas corpus*, when the prosecution is in his or her county (55 ILCS 5/3-9005(a)(5) (West 2012)); to give his or her opinion, without fee or reward, to any county officer in the county, upon any question or law relating to any criminal or other matter, in which the people or the county may be concerned (55 ILCS 5/3-9005(a)(7) (West 2012)); to assist the Attorney General whenever necessary (55 ILCS 5/3-9005(a)(8) (West 2012)); to pay, without delay, all moneys received in trust to the officer who by law is entitled to the custody thereof (55 ILCS 5/3-9005(a)(9) (West 2012)); to notify, by first class mail, complaining witnesses of the ultimate disposition of cases arising from an indictment or an information and to notify various school officials upon the felony conviction of a teacher or educator (55 ILCS 5/3-9005(a)(10), (a)(13) (West 2012)); to appear in all proceedings by tax collectors against delinquent taxpayers for judgments to sell real estate and see that all the necessary preliminary steps have been legally taken to make the judgment legal and binding (55 ILCS 5/3-9005(a)(12) (West 2012)); and "[t]o perform such other and further duties as may, from time to time, be enjoined on him by law" (55 ILCS 5/3-9005(a)(11) (West 2012)). We have recognized that "the enumeration of a State's Attorney's duties in section 3-9005 is not meant to be all-inclusive or restrictive, as evinced by subsection (a)(11)'s broad, catchall language." *Gaughan*, 2016 IL 120110, ¶ 30.

¶ 21   In the case at bar, defendants Harris and Saxen correctly observe that nowhere does section 3-9005(a) prescribe that a State's Attorney patrol the highways, engage in law enforcement, and conduct drug interdiction. However, the State argues that a State's Attorney's duty to investigate is found in common law. We now look to common law for this duty and any attendant conditions or limitations.

¶ 22   Illinois case law prescribes duties of a State's Attorney in addition to those enumerated in section 3-9005(a). *Ware v. Carey*, 75 Ill. App. 3d 906, 913-14 (1979) (and cases cited therein). These duties are in recognition that the State's Attorney is vested with wide discretion in enforcing the criminal laws and has the responsibility of evaluating evidence and other pertinent factors and determining what, if any, offense may be charged. *People v. Williams*, 147 Ill. 2d 173, 256 (1991) (and cases cited therein). Courts recognize that the role of a public

prosecutor in our legal system has two distinct aspects. On the one hand, a prosecutor functions as an advocate for the State by evaluating evidence and interviewing witnesses in preparing for the initiation of a prosecution or for judicial proceedings. On the other hand, a prosecutor may also perform "the investigative functions normally performed by a detective or police officer" by searching for the clues and corroboration that might furnish probable cause to recommend that a suspect be arrested. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); see *Bianchi v. McQueen*, 2016 IL App (2d) 150646, ¶ 52; *White v. City of Chicago*, 369 Ill. App. 3d 765, 769-71 (2006). Generally, Illinois case law recognizes that a State's Attorney has an affirmative duty to investigate the facts and determine whether an offense has been committed. See, *e.g.*, *McCall v. Devine*, 334 Ill. App. 3d 192, 204 (2002); *People v. Nohren*, 283 Ill. App. 3d 753, 758 (1996); *Ware*, 75 Ill. App. 3d at 913-14; *People v. Pohl*, 47 Ill. App. 2d 232, 242 (1964).

¶ 23    At Ringland's suppression hearing, Towne testified that the conduct of the SAFE unit helped him in the performance of his duties, pursuant to section 3-9005(b), because one of his duties was "the eradication of narcotic trafficking here in La Salle County." Before this court, the State argues that the execution of traffic stops by the SAFE unit assists the State's Attorney in his or her common-law duty to investigate suspected illegal activity. According to the State: "Where State's Attorneys have resources that can contribute to law enforcement efforts to fight crime, neither Section 3-9005(b) nor the common law bars them from contributing those resources in service of the law enforcement community's shared duty to maintain the rule of law."

¶ 24    Close analysis of the State's Attorney's common-law duty to investigate suspected illegal activity reveals a significant limitation on its exercise. The State's Attorney's duty to investigate suspected illegal activity acknowledges that a prosecutor ordinarily relies on police and other agencies for investigation of criminal acts. See *Williams*, 147 Ill. 2d at 256 (quoting ABA Standards for Criminal Justice, Standard 3-3.1(a) (2d ed. 1980)); *People v. Mitts*, 327 Ill. App. 3d 1, 16 (2001); *Nohren*, 283 Ill. App. 3d at 758 (quoting ABA Standards for Criminal Justice, Standard 3-3.1(a) (3d ed. 1993)); *Ware*, 75 Ill. App. 3d at 914 (quoting ABA Standards for Criminal Justice, The Prosecution Function, Standard 3.1(a) (1971)). Our appellate court has explained as follows:

> "[A State's Attorney's] duty to investigate is not exclusive and necessarily involves him with other investigative agencies. Justice is not served when the State's Attorney's duty to investigate collides with the duty of the police to investigate. The State's Attorney does not possess the technical facilities nor the manpower that the police have. *Consequently, it is the recognized practice that the State's Attorney sensibly defers to the investigative duties of the police.* It is also the general practice that the State's Attorney stands ready *to provide assistance* to the police." (Emphases added.) *People v. Wilson*, 254 Ill. App. 3d 1020, 1039 (1993).

For example, a former Cook County State's Attorney observed: "Although it may seem axiomatic, it cannot be left unsaid that the state's attorney should not involve himself in 'policing.' " Bernard T. Carey, *Rights, Powers and Duties of the State's Attorney*, in Prosecution of a Criminal Case § 27.33, at 27-19 (Ill. Inst. for Cont. Legal Educ. 1979). A former Will County State's Attorney similarly observed: "The prosecutor must always remember that his primary role is not that of investigator." Edward F. Petka, *Rights, Powers*

*and Duties of the State's Attorney*, in Prosecution of a Criminal Case § 1.24 (Ill. Inst. for Cont. Legal Educ. 1983 Supp.). Indeed, Professor LaFave reminds us that substantive differences do exist between the prosecutor and the police:

> "Although the police and prosecutor share a common goal in the effective enforcement of the criminal law, they come at that goal with differences that create a real potential for conflict. They approach the task of enforcement from the outlooks of different professional backgrounds, while performing different roles and viewing the offense, the offender and the victim from different vantage points." 1 Wayne R. LaFave *et al.*, Criminal Procedure § 1.4(c), at 157 (4th ed. 2015).

Clearly, the State's Attorney's common-law duty to investigate suspected illegal activity is premised on a deference to law enforcement agencies.

¶ 25 Based on this premise, we have recognized that a State's Attorney has an affirmative duty to investigate suspected illegal activity "*when it is not adequately dealt with by other agencies.*" (Emphasis added and internal quotation marks omitted.) *Williams*, 147 Ill. 2d at 256; see *Nohren*, 283 Ill. App. 3d at 758; *Ware*, 75 Ill. App. 3d at 914. The relevant commentary to the American Bar Association standards, cited by Illinois courts, similarly explains as follows:

> "The bulk of a prosecutor's work consists of cases in which a complaint has been made by a citizen or by a public agency or cases that develop subsequent to an arrest made by the police. But *there are instances* in which a citizen is reluctant to prosecute, from ignorance, fear, inertia, or other motive, or in which the police have not taken the initiative. This may be because the area of illegal activity in question is not one that attracts law enforcement interest *** or where law enforcement officials are themselves involved.
>
> It is important, therefore, that *in some circumstances* the prosecutor take the initiative to investigate suspected criminal acts independent of citizen complaints or police activity." (Emphases added.) ABA Standards for Criminal Justice, Standard 3-3.1(a), Commentary (3d ed. 1993).

Accord *id.* Standard 3-2.4, Commentary ("However, the prosecutor may need to conduct investigations that the police are unable or unwilling to undertake" and "may also need to carry out lengthy or unusually technical investigations."). We conclude that the State's Attorney's common-law duty to investigate suspected illegal activity is limited to circumstances where other law enforcement agencies inadequately deal with such investigation (see *Williams*, 147 Ill. 2d at 256) or where a law enforcement agency asks the State's Attorney for assistance (see *Wilson*, 254 Ill. App. 3d at 1039).

¶ 26 Our dissenting colleagues contend that the State's Attorney's duty to investigate suspected illegal activity is boundless and unrestricted. We disagree. The dissent accepts the State's argument that the State's Attorney's deference to the investigative duties of law enforcement agencies "is a product of pragmatism rather than principle." However, "the common law is at bottom the philosophy of pragmatism." Benjamin N. Cardozo, The Nature of the Judicial Process 102 (1921). The earlier-quoted ABA Standard does not declare the prosecutor's duty to investigate suspected illegal activity in absolute or abstract terms. Rather, the Standard explains that the duty arises in specific, real-world "instances" and "circumstances." ABA

Standards for Criminal Justice, Standard 3-3.1(a), Commentary (3d ed. 1993). Our case law reflects this settled understanding.

¶ 27　　The dissent raises two additional points. First, the dissent contends that "imposing" this limitation on the State's Attorney's duty to investigate suspected illegal activity is "unworkable." We disagree. Our dissenting colleagues overlook that the limitation we are applying, which is grounded in specific real-world circumstances, is part and parcel of the duty on which they rely. Further, we observe that defendants raised this issue in their motions to suppress evidence pursuant to section 114-12(a)(1) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-12(a)(1) (West 2010)). *Any* motion to suppress evidence obtained without a warrant alleges that the search and seizure was conducted without authority. Courts regularly decide such issues, including the appellate court in the case at bar. The "incremental pragmatism and seasoned skepticism of the common law process [is] uniquely suited to these unparalleled cases." (Internal quotation marks omitted.) Judith S. Kaye, *Forward: The Common Law and State Constitutional Law as Full Partners in the Protection of Individual Rights*, 23 Rutgers L.J. 727, 747 (1992).

¶ 28　　Second, the dissent questions the impact of our decision on the investigatory powers of the grand jury. This concern is unfounded. Our case law discusses the State's Attorney's common-law duty to investigate suspected illegal activity in the context of the State's Attorney's relationship with law enforcement agencies—not the State's Attorney's relationship with the grand jury.[5]

¶ 29　　Before this court, the State argues that Towne created the SAFE unit to act "in cooperation" with local police departments.[6] Further, the State characterizes the traffic stops conducted by the SAFE unit as "joint investigations."

¶ 30　　The record belies this argument. At Ringland's suppression hearing, Towne did not refer to any inadequacy on the part of any law enforcement agency to investigate suspected illegal activity. Further, Towne did not refer to any request for assistance from any law enforcement agency. Also, the circuit court made the following undisputed findings of fact:

> "They [SAFE investigators] must make their stop before the dog can walk or they can make a [detection]. In other words, this is not aiding some other investigation that normally you would have where the State's Attorney in this county got somebody, came in, made a complaint, conducted and sent out an investigator to follow-up. They are actually going out and seeking complaints by making petty traffic stops and petty offenses."

The court found that Gaither was "not getting his information from some other agency or aiding some other agency. *** He's initiating these traffic stops and the investigation." Clearly, SAFE investigators independently initiated the instant traffic stops without cooperation with or input from other law enforcement agencies. The conduct of the SAFE unit stands in stark contrast to cases such as *People v. Alcala*, 248 Ill. App. 3d 411 (1993), and *People v. Sequoia Books, Inc.*, 150 Ill. App. 3d 211 (1986), where in each case a State's

---

[5]Further, this concern overlooks the obvious qualitative difference between a State's Attorney requesting a grand jury subpoena and a State's Attorney forming his or her own drug interdiction team to perform the law enforcement function of conducting traffic stops to search for illegal drugs.

[6]The dissent agrees with this argument.

Attorney special investigator truly acted in concert with local law enforcement officials after it was learned that a specific crime had been, or was about to be, committed.

¶ 31　　Also, the State's proffered construction of section 3-9005(b) would potentially allow the formation of 102 additional police forces statewide, each directed by a State's Attorney, rendering superfluous the three statutory functions of State's Attorney special investigators. For example, in defendant Ringland's case, Gaither additionally testified that he was provided with a booklet of written traffic warnings to issue to the motorists that he detained. The warning tickets bore the legend "La Salle County SAFE Unit." Towne acknowledged that his office provided Gaither and other SAFE unit members with booklets of written traffic warnings. When asked whether he relied on any statutory authority for obtaining these ticket books and directing SAFE unit members to use them, Towne answered: "Not that I recall." Based on Towne's exhortation to "go out and enforce the law," the SAFE unit essentially operated as a county police force at the direction of Towne, generating its own cases. The legislature could not have intended such a far-reaching result.[7]

¶ 32　　Additionally, we consider the consequences of the State's position. During Towne's direct examination at Ringland's suppression hearing, Towne testified that after Ringland was arrested, his office filed a criminal information against her. Defense counsel asked Towne: "So your office in substance and sum performed both functions of arresting, processing and then prosecuting?" Towne answered: "Yes." Further, during cross-examination, the following colloquy occurred:

> "[Prosecutor]: You swore Jeff Gaither in as a police officer pursuant to the State's Attorney's Act on January 21st of 2012; is that correct?
>
> [Defense Counsel]: Objection. His title is not police officer. It's investigator of the State's Attorney's Office.
>
> THE COURT: Rephrase your question."

This is exactly the point. To construe section 3-9005(b) as the State urges would promote confusion between the distinct functions of general law enforcement and assisting a State's Attorney in the performance of his or her duties.

¶ 33　　We hold that the State's Attorney's common-law duty to investigate suspected illegal activity did not apply to Towne because he made no showing that law enforcement agencies inadequately dealt with such investigation or that any law enforcement agency asked him for assistance. Absent this duty, the conduct of the SAFE unit fell outside of the scope of section 3-9005(b).

¶ 34　　We observe that the parties disagree whether the instant traffic stops constituted an appropriate form of assistance for Towne to provide. According to the State, the assistance that the State's Attorney can provide to law enforcement agencies "can take a variety of forms." In response, defendant Saxen argues that "the common-law duty of state's attorneys to

---

[7]The dissent views this concern as "baseless," reasoning that the authority of the SAFE unit is limited to the scope of Towne's assignment to search for illegal drug traffickers on Interstate 80. This is obviously no meaningful limitation. A State's Attorney could declare a common-law duty to investigate *any* suspected illegal activity *anywhere* in the county and authorize section 3-9005(b) special investigators to conduct investigations that assist in the performance of that duty. Such an authorization would create the functional equivalent of a county police force.

investigate does not encompass the patrol of highways to look for the occurrence of crime for purposes of drug interdiction."

¶ 35     We need not and do not address this issue. We have held that Towne's common-law duty to investigate suspected illegal activity did not cover the situation before us and, absent this duty, the conduct of the SAFE unit fell outside of the scope of section 3-9005(b). Thus, any discussion of whether a traffic stop is an appropriate means of exercising this duty can in no way affect the outcome of this case. Generally, a court of review will not consider an issue where it is not essential to the disposition of the case or where the result will not be affected regardless of how the issue is decided; nor will a reviewing court decide abstract questions or render advisory opinions. *People v. Campa*, 217 Ill. 2d 243, 269-70 (2005) (and cases cited therein).

¶ 36     The State additionally contends that "even if Gaither's appointment was invalid due to procedural errors, defendants cannot exclude the evidence obtained incident to their arrests on that basis." The State offers three reasons: (1) the exclusionary rule is not available based solely on the alleged invalidity of Gaither's appointment, (2) the traffic stops were valid citizen's arrests, and (3) the *de facto* officer doctrine precluded defendants from challenging the validity of Gaither's appointment at their suppression hearings.

¶ 37     We will not address this contention for two reasons. First, the State failed to raise it in both the circuit and appellate courts, and it is thereby forfeited.[8] See, *e.g.*, *People v. Washington*, 2012 IL 110283, ¶ 62 (stating "[w]here the appellant in the appellate court fails to raise an issue in that court, this court will not address it"); *People v. James*, 163 Ill. 2d 302, 321-22 (1994) (declining to consider issue that State never presented to trial or appellate court); *People v. Adams*, 131 Ill. 2d 387, 395-96 (1989) (same). Second, our disposition of this appeal is based on the absence of the State's Attorney's common-law duty to investigate suspected illegal activity, not on the validity of Gaither's appointment. Accordingly, this contention is not essential to the disposition of this appeal, and we will not render an advisory opinion.

¶ 38     Defendants alternatively invite us to declare these traffic stops invalid pursuant to the search and seizure provision in the Illinois Constitution (Ill. Const. 1970, art. I, § 6). "This court will not consider a constitutional question if the case can be decided on other grounds." *People v. Lee*, 214 Ill. 2d 476, 482 (2005). Since we have decided this case based on section 3-9005(b), we need not consider defendants' constitutional challenge. See *id.* at 489.

¶ 39                                    III. CONCLUSION
¶ 40     For the foregoing reasons, the judgment of the appellate court is affirmed.

¶ 41     Affirmed.

¶ 42     JUSTICE GARMAN, dissenting:
¶ 43     The majority opinion restricts the State's Attorney's duty to investigate suspected illegal activity to situations in which "other law enforcement agencies inadequately deal with such investigation [citation] or where a law enforcement agency asks the State's Attorney for

---

[8]Defendants filed several motions to strike this portion of the State's appellant and reply briefs. We took these motions with the case. They are hereby denied as moot.

- 11 -

assistance." *Supra* ¶ 25. There is no support for this restrictive interpretation of the State's Attorney's duties in our common law or the Counties Code. Therefore, I respectfully dissent.

¶ 44     Section 3-9005(b) of the Counties Code provides State's Attorneys with the authority to appoint special investigators to "conduct investigations which assist the State's Attorney in the performance of his duties." 55 ILCS 5/3-9005(b) (West 2012). The powers of the State's Attorneys are derived from the constitution and include both common-law and statutory duties. *County of Cook ex rel. Rifkin v. Bear Stearns & Company, Inc.*, 215 Ill. 2d 466, 475-78 (2005). The legislature can prescribe additional duties to the State's Attorney but cannot take away or transfer the State's Attorney's constitutional powers. *Id.*

¶ 45     One duty of the State's Attorney is to investigate suspected illegal activity. See *People v. Williams*, 147 Ill. 2d 173, 256 (1991) (recognizing the duty of the State's Attorney to investigate suspected illegal activity); *People v. Nohren*, 283 Ill. App. 3d 753, 758 (1996) ("It is the duty of the State's Attorney to investigate facts and determine whether an offense has been committed. [Citations.] *** The State's Attorney is *** charged with these duties prior to the filing of formal accusations by the State."). State's Attorney Towne testified that he created the SAFE unit to investigate felony trafficking on the highways of La Salle County. Specifically, Towne testified that he intended to use the unit to investigate drug trafficking on Interstate 80. He appointed investigators with previous experience in drug interdiction for this purpose. Special Investigator Gaither also testified that the SAFE unit was tasked with conducting drug interdictions on Interstate 80 and other local highways.

¶ 46     The majority cites several cases in support of its claim that the duty to investigate is limited. None of these cases directly address the scope of the State's Attorney's duty to investigate suspected illegal activity. In *Williams*, this court addressed the duty of the State's Attorney to investigate information implicating other persons when prosecuting a case. 147 Ill. 2d at 255. In *People v. Wilson*, the appellate court discussed the duty to investigate in the context of deciding whether the prosecutor's involvement in approving a warrant committed the prosecutor to subsequent prosecution. 254 Ill. App. 3d 1020, 1039 (1993). In *Nohren*, the court confirmed the power of the State's Attorney to use a subpoena *duces tecum* to investigate a crime with which the defendant has not yet been charged. 283 Ill. App. 3d at 758. In *Ware v. Carey*, the appellate court considered the duties of the State's Attorney to determine whether a State's Attorney's statement to the press should be afforded absolute privilege. 75 Ill. App. 3d 906, 916-17 (1979).

¶ 47     In *Williams*, *Nohren*, and *Ware*, the court quoted an edition of the ABA Standards for Criminal Justice, Standard 3-3.1(a). "A prosecutor ordinarily relies on police and other investigative agencies for investigation of alleged criminal acts, but the prosecutor has an affirmative responsibility to investigate suspected illegal activity when it is not adequately dealt with by other agencies." ABA Standards for Criminal Justice, Standard 3-3.1(a), at 47 (3d ed. 1993). Similarly, in *Wilson*, the court discussed the State's Attorney's duty to investigate and noted that it is the general practice of the State's Attorney to defer to the police in investigations. 254 Ill. App. 3d at 1039. However, nothing in these cases or in the ABA Standard indicates that the State's Attorney's investigative duties are triggered only after it is determined that suspected illegal activity is not adequately being dealt with by other agencies. The Standards section simply notes that the State's Attorney typically cooperates with law enforcement agencies for the purpose of investigation and that the State's Attorney has a duty

to take action when such agencies fail. It says nothing about the State's Attorney's duties in other situations. Although it may be good policy for the State's Attorney to cooperate with other agencies on investigations, there is nothing in our common or statutory law prohibiting the State's Attorney from undertaking independent investigations.

¶ 48 Imposing such a restriction as a matter of law, however, is unworkable. It is not clear who will be expected to determine that no other agency has adequately addressed a particular situation, how inadequacy should be measured, or how a court should review that determination retroactively.

¶ 49 Additionally, the majority opinion fails to address how these restrictions would impact the ability of the State's Attorney to rely on the investigatory powers of the grand jury. 1 Wayne R. LaFave *et al.*, Criminal Procedure § 1.5(b), at 216-17 (4th ed. 2015) ("The prosecutor is granted investigative authority that is even broader in some respects [than that of the police] through the use of the investigative grand jury."); see generally 3 Wayne R. LaFave *et al.*, Criminal Procedure §§ 8.1 to 8.14 (4th ed. 2015) (discussing the investigatory powers of the grand jury); *id.* § 8.4(b) (discussing the relationship between the prosecutor and the grand jury). In no case has the court conditioned the State's Attorney's ability to request a subpoena from a grand jury on a requirement that the State's Attorney first prove that law enforcement has inadequately handled an investigation or that law enforcement has requested assistance. See, *e.g.*, *People v. Boston*, 2016 IL 118661, ¶ 4 (no discussion of the involvement of law enforcement when discussing the State's Attorney's request for a subpoena to investigate a cold case); *People v. Pawlaczyk*, 189 Ill. 2d 177 (2000) (no discussion of other agency involvement in analysis of whether special prosecutor properly sought to divest the defendants of their reporter's privilege in a grand jury investigation); *People v. Wilson*, 164 Ill. 2d 436, 458 (1994) (no discussion of other agency involvement in analysis of grand jury's power to disclose subpoenaed documents to the State's Attorney and the State's Attorney's power to subpoena documents); see also 3 LaFave *et al.*, *supra* § 8.4(b) (noting that "the typical grand jury investigation is dominated by the prosecutor" without any mention of restrictions based on the involvement of other agencies).

¶ 50 To the extent the majority suggests its novel restriction applies only in circumstances involving law enforcement or the exercise of peace officer powers, there is no support in our common law for restraining the common-law duties of the State's Attorney based on different types of investigations. Nor is there any support in section 3-9005(b), which spells out the powers of special investigators, for limiting the exercise of peace officer powers based on the request or failure of other agencies.

¶ 51 The majority insists that without such restrictions, each State's Attorney would be able to create his or her own police force. This concern is baseless. The consolidated cases at issue involved only stops within the scope of the SAFE unit's assignment to investigate trafficking on the highways of La Salle County. Holding that the stops were valid would not authorize State's Attorneys to create police forces with broad powers. The facts suggested by the majority in a footnote (*supra* ¶ 31 n.7) are not before the court, and therefore any analysis of whether the State's Attorney could "declare" such a broad duty is speculative.

¶ 52 For these reasons, I would conclude that the State's Attorney has authority to investigate suspected illegal activity regardless of how other agencies have addressed the activity and in

the absence of any request for assistance. The special investigators here were appointed to conduct investigations to assist the State's Attorney with this duty.

¶ 53    Defendants also argued that their motions to suppress evidence should have been granted because the special investigators were not authorized to conduct the traffic stops that led to their arrests. Section 3-9005(b) provides that, subject to qualifications, "special investigators shall be peace officers and shall have all the powers possessed by investigators under the State's Attorneys Appellate Prosecutor's Act." 55 ILCS 5/3-9005(b) (West 2012). The State's Attorneys Appellate Prosecutor's Act provides that special investigators "shall have all the powers possessed by policemen in cities and by sheriffs; provided, that investigators shall exercise such powers anywhere in the State only after contact and in cooperation with the appropriate local law enforcement agencies." 725 ILCS 210/7.06(a) (West 2012). As soon as a SAFE investigator initiated a traffic stop, he called the stop in to the police department, which immediately dispatched an officer with a drug-detection dog. Officer Brown of the Peru police department testified about his experience stopping defendant Ringland with Gaither. Thus, the SAFE unit investigators were in contact with and acting in cooperation with the Peru and La Salle police departments, and the investigators were entitled to peace officer powers.

¶ 54    Peace officers have the authority to make a traffic stop, so long as the stop does not violate the driver's constitutional rights. See *Whren v. United States*, 517 U.S. 806, 809-10 (1996). A stop does not violate a driver's fourth amendment rights if it is reasonable; the officer must have probable cause to believe that a traffic violation has occurred. *Id.* Gaither testified that, when making each traffic stop, he had probable cause to believe that a traffic violation had occurred based on his observation of the driver or his vehicle. Defendants do not argue that Gaither lacked probable cause to initiate each traffic stop.

¶ 55    Nor did the use of a drug-detection dog violate defendants' rights. "[T]he use of a well-trained narcotics-detection dog *** during a lawful traffic stop generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005); see *People v. Caballes*, 221 Ill. 2d 282, 331 (2006) (interpreting the phrase "search and seizure" in the Illinois Constitution as analogous to that phrase as it is used in the United States Constitution and holding that a dog sniff of a vehicle does not constitute an invasion of privacy that would violate the Illinois Constitution). However, a justified seizure can become unconstitutional if it is prolonged beyond the time reasonably required to complete the traffic ticket or warning. *Caballes*, 543 U.S. at 407. Here, the canine unit arrived at each scene as the investigator was writing up a warning and did not unconstitutionally prolong the traffic stops.

¶ 56    Alternatively, defendants assert that Gaither was never properly appointed as a special investigator as required by the Code. Section 3-9005(b) states:

> "Before a person is appointed as a special investigator, his fingerprints shall be taken and transmitted to the Department of State Police. The Department shall examine its records and submit to the State's Attorney of the county in which the investigator seeks appointment any conviction information concerning the person on file with the Department. No person shall be appointed as a special investigator if he has been convicted of a felony or other offense involving moral turpitude." 55 ILCS 5/3-9005(b) (West 2012).

State's Attorney Towne testified that, because Gaither had been a police officer, his fingerprints were already on file with the Illinois State Police. Towne further testified that he

was familiar with Gaither's record as a member of the Illinois State Police and that Gaither had been through all of the required police trainings. He testified that his office had been in communication with the Illinois Law Enforcement Training and Standards Board to ensure that all requirements were satisfied, although no written waiver had been granted at the time Gaither was appointed. He testified that, "through [his] investigation and [his] knowledge," he was certain that Gaither had never been convicted of a felony or crime of moral turpitude. Furthermore, the parties stipulated that if Laura Baker, an employee of the Illinois Law Enforcement Training and Standards Board, were called to testify, she would state under oath that a background check was performed on Jeffrey Gaither, that there were no felony convictions or crimes of moral turpitude found on the background check, and that there was no information gained from the background check that would have interfered with the issuance of Gaither's waiver request. Regardless, defendants contend that because the State's Attorney's office did not submit Gaither's fingerprints and because no background check information was relayed to Towne, Gaither's appointment was invalid.

¶ 57    The fingerprint and background check requirements of section 3-9005(b) are directory, not mandatory. A statute is mandatory "if the intent of the legislature dictates a particular consequence for failure to comply with the provision." *People v. Delvillar*, 235 Ill. 2d 507, 514 (2009). "In the absence of such intent the statute is directory and no particular consequence flows from noncompliance." *Id.* at 515; *id.* at 526 (Freeman, J., specially concurring) (" '[W]hen a statute specifies what result will ensue if its terms are not complied with, the statute is deemed mandatory ***; [h]owever, if it merely requires certain things to be done and nowhere prescribes results that follow, such a statute is merely directory.' " (quoting 3 Norman J. Singer, Statutes and Statutory Construction § 57:3, at 23-24 (6th rev. ed. 2001))). Statutes that issue a procedural command to a government official are presumptively directory. *Id.* at 517 (citing *People v. Robinson*, 217 Ill. 2d 43, 58 (2005)). The presumption is overcome if there is "negative language prohibiting further action in the case of noncompliance" or "when the right the provision is designed to protect would generally be injured under a directory reading." *Id.* (citing *Robinson*, 217 Ill. 2d at 58). Here, the statute states that "fingerprints shall be taken and transmitted" and that the Department of State Police shall conduct a background check and transmit the results to the State's Attorney. Nothing in the statute states a consequence for failure to take and transmit a potential investigator's fingerprints or for failure of the Department of State Police to conduct a background check and submit conviction information to the State's Attorney. Defendants agree that the purpose of the requirements is to protect the public. Reading the fingerprinting and background information requirements as directory does not generally frustrate that purpose. The purpose would be frustrated by a violation of the provision prohibiting the appointment of a special investigator that has been convicted of a felony or other offense involving moral turpitude.

¶ 58    "[A] defendant must show he was prejudiced to be entitled to relief for violation of a directory rule." *People v. Geiler*, 2016 IL 119059, ¶ 25 (citing *People v. Ziobro*, 242 Ill. 2d 34, 45 (2011)). Although the State's Attorney failed to strictly comply with the requirements of the Code, Gaither's fingerprints were on file with the State Police Board, a background check was completed, and the State's Attorney was informed that Gaither had never been convicted of a felony or crime of moral turpitude. Defendants have not alleged that Gaither has ever been convicted of such crimes. Assuming the Department of State Police's failure to submit the

- 15 -

results of the background check violated the requirements, defendants have not shown that they suffered any prejudice. Therefore, defendants' motions should have been denied.

¶ 59 In sum, the State's Attorney has the duty to investigate suspected illegal activity, and until today, that duty had not been limited to circumstances in which a law enforcement agency has failed to adequately address the situation or in which a law enforcement agency requests assistance. Neither our common law nor our statutory law supports these restrictions. For this reason, I respectfully dissent.

¶ 60 Because State's Attorney Towne had a duty to investigate suspected illegal activity, he had the authority under section 3-9005(b) to appoint special investigators to assist in his investigation of drug trafficking on the highways in La Salle County. The SAFE investigators cooperated with local law enforcement and, as duly authorized peace officers, conducted constitutional traffic stops within the scope of the investigation. Gaither, the investigator involved, was a recently retired police officer, so the Department of State Police already had his fingerprints and was able to search for any conviction information. Towne and an employee of the Law Enforcement Training and Standards Board testified that Gaither had not been convicted of any felonies or other crimes of moral turpitude. Any procedural error made in Gaither's appointment did not render the arrests invalid or justify suppressing evidence of illegal narcotics. I would reverse the judgment of the appellate and circuit courts.

¶ 61 JUSTICE KILBRIDE joins in this dissent.