# Illinois Official Reports

## Appellate Court

---

### *People v. Bons*, 2021 IL App (3d) 180464

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSE A. BONS, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-18-0464 |
| Filed | June 10, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 17-CF-143; the Hon. Stanley B. Steines, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Karalis, and Emily A. Brandon, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Terry A. Costello, State's Attorney, of Morrison (Patrick Delfino, Thomas D. Arado, and Jamie L. Bellah, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE DAUGHERITY delivered the judgment of the court, with opinion.<br>Justice Lytton concurred in the judgment and opinion.<br>Justice Holdridge specially concurred, with opinion. |

**OPINION**

¶ 1    Defendant, Jesse A. Bons, appeals his predatory criminal sexual assault of a child conviction. He argues that the Whiteside County circuit court erred by admitting evidence of his medical condition under subsections 8-802(4) and (7) of the Code of Civil Procedure (Code) (735 ILCS 5/8-802(4), (7) (West 2016)) and that the testimony regarding his medical condition was inadmissible hearsay. We affirm.

## I. BACKGROUND

¶ 2

¶ 3    The State charged defendant with predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)). The charge alleged that between July 17, 2015, and April 19, 2016, defendant, who was over 17 years of age, knowingly committed an act of sexual contact with C.B., who was less than 13 years of age, in that defendant placed his penis in C.B.'s vagina and anus.

¶ 4    Before trial, defense counsel filed a motion *in limine* requesting that the circuit court bar any evidence regarding defendant's chlamydia diagnosis. At the hearing on the motion *in limine*, the State proffered that a member of the health department asked the State for defendant's contact information. Further, the morning of the hearing, C.B.'s mother, Saleana Raab, informed the State that defendant had previously told her that he had been diagnosed with and treated for chlamydia. According to Raab, defendant subsequently indicated that he had no knowledge of his chlamydia diagnosis. The State asked to continue the hearing to address the foundational requirements to admit defendant's chlamydia diagnosis. The court continued the hearing over defendant's objection.

¶ 5    The State subpoenaed the Morrison Community Hospital for defendant's medical records from May 23, 2017, regarding defendant's visit and treatment for chlamydia. Defense counsel filed a motion to quash the subpoena.

¶ 6    At the hearing on defendant's motion to quash, defense counsel argued that defendant did not consent to release his medical records. Counsel asserted that without defendant's consent or waiver, only an applicable exception could waive defendant's physician-patient privilege. See 735 ILCS 5/8-802 (West 2016). Counsel further contended that the subsection 8-802(4) exception did not apply because defendant's medical condition was not an element of the offense and not at issue. See *id.* § 8-802(4). Additionally, counsel argued that subsection 8-802(7) did not automatically waive defendant's privilege simply because a Department of Children and Family Services (DCFS) report was made. Instead, the subsection 8-802(7) exception was inapplicable to defendant because it required a physician to disclose findings made during an evaluation of a child after a DCFS report was made. See *id.* § 8-802(7).

¶ 7    The State argued that subsection 8-802(4) applied because "there is a physical or mental condition that is an issue, and it becomes an issue because it is relevant, and, *** all evidence that is relevant is admissible." The State contended that defendant's medical condition was relevant because C.B. had been diagnosed with the same sexually transmitted disease (STD) as defendant, chlamydia. The State also argued that defendant's condition was evidence of a sexual act and, therefore, was evidence of an element of the offense.

¶ 8    The State also argued that subsection 8-802(7) applied because the criminal proceeding arose from a report filed under the Abused and Neglected Child Reporting Act (Act) (325 ILCS

5/1 *et seq.* (West 2016)). The State proffered that, as part of a police investigation, defendant informed Detective David Pilgrim that he learned C.B. had an STD. Afterward, defendant submitted to an STD screening. Further, Raab informed Pilgrim that after she told defendant about C.B.'s chlamydia diagnosis, defendant went to Morrison Community Hospital on May 23, 2017, for STD testing.

¶ 9      The court found defendant's medical condition at issue due to the sexual nature of the charged offense. The court reasoned that subsection 8-802(4) was "almost a catch all in a way, that any time you have a proceeding against a patient and their physical or mental condition is at issue, that the physician is allowed to release or disclose those protected health issues." The court also found that subsection 8-802(7) applied because the criminal case arose from the filing of a DCFS report. The court denied defendant's motion *in limine* and released defendant's medical records to the parties. The case proceeded to a bench trial.

¶ 10      Tammy Meumann testified that she was a counselor at C.B.'s elementary school. On May 8, 2017, Meumann met with C.B. regarding statements that C.B. had made to another student. C.B. told Meumann that defendant entered the bathroom with her and hit her face with his hand. Defendant took C.B. to his bedroom and "had sex with her." Defendant took his "thing" out and put it in her "bad spot." C.B. pointed to her vaginal area as she referred to her "bad spot." Defendant told C.B. not to tell anyone. When Meumann attempted to clarify where the sexual abuse took place, C.B. said, "at her house, at the new house, at the old house." When asked how many times defendant sexually abused her, C.B. gave several answers between one and four. Based on this conversation, Meumann made a report to DCFS.

¶ 11      Raab testified that around May 8 or 9, 2017, a representative from C.B.'s school asked her to speak with a DCFS caseworker and police officers. Following the meeting, Raab took C.B. to a forensic interview and medical examination. The examination revealed that C.B. had chlamydia. C.B. did not disclose to Raab any information regarding sexual abuse.

¶ 12      Raab started dating defendant in May or June 2015. After July 2015, defendant began living with Raab and her two children, A.B. and C.B. When defendant moved in, C.B. was approximately 4½ years old. During this time, Raab worked varying night and day shifts, and defendant watched Raab's children while she worked.

¶ 13      On cross-examination, Raab testified that during the time defendant lived with her, C.B. observed several instances of sexual conduct between defendant and Raab. Raab also said that C.B. occasionally had a rash on her genitals that required treatment. At some point, C.B. received a prescription for the rash in the form of a topical cream. Raab stated that on one occasion defendant had applied C.B.'s prescription.

¶ 14      C.B. testified that she was six years old. C.B. previously lived with Raab, A.B., and defendant. In May 2017, C.B. spoke to several people about an incident that occurred when she lived with defendant. When asked to describe the incident with defendant, C.B. said, "[h]e had sex." Subsequently, the State asked

> "Q. *** [W]hat did [defendant] do to you?
>
> A. He did sex.
>
> Q. He did sex. Can you—what do you mean by he did sex?
>
> A. I don't know what that means.
>
> Q. Can you tell when [defendant] did sex, did he have any part of his body exposed with his clothes off?

A. His pants."

C.B. explained that at the time she and defendant were alone in defendant's bedroom while Raab was at work. Defendant removed his pants, and his "wiener" touched C.B.'s "hoo-ha." C.B. identified her vaginal area as her "hoo-ha." When asked if it hurt when defendant put his "wiener" inside her "hoo-ha," C.B. said, "[y]eah, because of the nail, his nails." C.B. clarified that defendant did not put his hands inside her, just his penis. Also, defendant put his penis in her "butt." Defendant told C.B., "don't tell mommy."

¶ 15    On cross-examination, C.B. stated that sex means when "you just get your wiener out and then get your hoo-ha out and then put them together and they just go back and forth." C.B. learned the word "sex" from other children. C.B. saw defendant's penis when he was having sexual intercourse with Raab. C.B. could not recall who she told first about the sexual abuse but stated that she did tell Raab. C.B. understood the difference between a truth and a lie. C.B. stated that truth means "[t]o be respectful," and a lie means "God can hear you or you can— he put you in the dungeon down there."

¶ 16    Shannon Krueger, a pediatric nurse practitioner, testified that on May 18, 2017, she conducted a physical examination of C.B. Prior to the examination, C.B. told Krueger that defendant "had sex on her," which involved vaginal and anal contact on several different occasions. C.B. described defendant's penis as a "stick with something at the end of it with a hole where pee and other stuff comes out of." Defendant "took his weenie out of his pants" and "put his weenie in her pee bad spot, then her poo bad spot, and when he took it out of her poo bad spot he made her hold it *** in her hand and move back and forth." C.B. demonstrated the movement with her hands and stated that "warm gooey stuff that smelled bad came out of it." Defendant told C.B. that "she couldn't tell anybody or he would do more sex on her." C.B. asked if Krueger could look at her "hoo-ha *** to make sure that it was okay."

¶ 17    Krueger conducted a physical examination of C.B. and found no signs of sexual abuse. C.B.'s urine tested positive for chlamydia. Krueger testified that there were no documented cases of chlamydia transmission in humans other than sexual transmission.

¶ 18    Joan Hager testified that on May 10, 2017, she conducted a forensic interview with C.B. at the Children's Advocacy Center. The State entered the video recording of the interview into evidence and played it for the court.

¶ 19    In the video, C.B. tells Hager that defendant "wants to do sex." When asked what happened, C.B. states defendant took his "bad spot" out and put it inside her "bad spot." C.B. uses "bad spot" and "wiener" to describe defendant's penis. When Hager asks what made defendant stop, C.B. responds that defendant "ha[d] to come." C.B. then explains, "coming means he had to take a deep breath." C.B. says the incident occurred while Raab was at work. Defendant told C.B. not to tell anyone.

¶ 20    Sergeant Pilgrim testified that he interviewed defendant on May 11, 2017. Defendant lived with Raab and her children. Defendant watched the children while Raab was at work. While watching them, defendant observed that C.B. had peed her pants and had a rash on her genital area. Defendant applied cream to her genital area one or two times.

¶ 21    Following defendant's arrest on May 23, 2017, Pilgrim interviewed defendant a second time. Defendant denied sexually assaulting C.B. Defendant told Pilgrim that he went to Morrison Community Hospital for STD testing.

¶ 22		Krista Barnes, a physician's assistant at Morrison Community Hospital, testified that on May 23, 2017, she observed a person enter the hospital who identified himself as defendant.[1] Counsel objected and argued defendant's medical information was inadmissible under section 8-802 of the Code. The court overruled defendant's objection. Defendant requested STD testing. Hospital staff obtained a urine and blood sample from defendant and submitted the samples for testing. Barnes documented defendant's treatment and laboratory results.

¶ 23		The State elicited evidence of the results of the STD test. Counsel objected to the admission of the results for lack of foundation. The court permitted counsel to ask several foundational questions, which established that the blood and urine samples collected were sent to a third-party laboratory for testing. The results were returned to the hospital. Barnes stated that reliance on reports generated by the third party was a "standard medical practice" used to treat patients. Barnes commonly relied on the results generated by the third party to administer care to patients. In this case, Barnes relied on the results to diagnose and treat defendant. Counsel objected to this testimony as inadmissible hearsay and renewed his earlier foundation objection. The court granted defendant's hearsay objection.

¶ 24		The State asked Barnes what she did with defendant's test results. Counsel objected to the relevance of Barnes's course of conduct. The court overruled the objection, and Barnes testified that, based on the test results, a doctor prescribed an antibiotic that would treat a positive chlamydia result. Counsel objected based on the court's prior ruling that information from defendant's medical records was hearsay. The court overruled the objection and stated, "It won't come in for the truth of the matter asserted but only with regard to why this physician assistant acted in a particular manner." Counsel moved to strike Barnes's testimony, which the court denied. Barnes testified that defendant's urine sample showed a positive chlamydia result.

¶ 25		Prior to the close of the State's case-in-chief, the court asked the parties to research the evidentiary issue of defendant's medical records admissibility. The parties renewed their prior arguments regarding admissibility under section 8-802 of the Code and whether the diagnosis was inadmissible hearsay. The court found that defendant's medical records were admissible as expert testimony under Illinois Rules of Evidence 702 (eff. Jan. 1, 2011).

¶ 26		Following the court's ruling, Barnes testified that defendant's urine test showed a positive result for chlamydia.

¶ 27		After closing arguments, the court found defendant guilty of predatory criminal sexual assault of a child. In its ruling, the court noted

> "I will add to that that without the dual diagnosis of chlamydia, whether I would be able to find [defendant] guilty beyond a reasonable doubt is difficult to say based upon what I indicated as to the confusion or the inconsistent testimony of the minor child, but I still go back to the point that I said earlier is in some ways that does add to the credibility of a child of this age, but I will certainly indicate that the evidence—the expert opinions of the health care providers that each of these people have tested positive for chlamydia and we have to keep in mind the age of the young child, we, certainly, know that it is absolutely uncommon for a kindergarten child to be diagnosed with chlamydia and we also know that there is some—that there is evidence that [defendant] himself voluntarily went to a health care clinic to be tested for that sexually

[1]Barnes did not identify defendant in court.

transmitted disease, so certainly, with those diagnosis, that is really what supports my finding that [defendant] is guilty beyond a reasonable doubt."

¶ 28 Counsel filed a motion for a new trial that argued the court erred when it denied the motion to quash the subpoena for defendant's medical records and permitted Barnes's testimony about defendant's medical condition. The court denied defendant's motion and sentenced defendant to 35 years' imprisonment.

¶ 29                                      II. ANALYSIS

¶ 30 On appeal, defendant argues (1) the circuit court improperly admitted evidence of his medical condition under subsections 8-802(4) and (7) of the Code (735 ILCS 5/8-802(4), (7) (West 2016)), and (2) the testimony regarding defendant's medical condition was hearsay. The State argues neither of the issues alleged by defendant are error, and in the alternative, if the court erred with regard to either issue, that error was harmless.

¶ 31                          A. Medical Condition Evidence

¶ 32 Defendant argues that the court erred when it concluded that the physician-patient privilege provision of section 8-802 of the Code did not apply to his medical records and that the State was entitled to the results of defendant's STD testing because (1) defendant placed his medical condition at issue (see *id.* § 8-802(4)) and (2) the applicability of the Act requires that the results be disclosed (see *id.* § 8-802(7)). Defendant's arguments require us to determine the meaning and applicability of two subsections of the Code. To determine the meaning of a statute, a reviewing court must ascertain and give effect to the legislature's intent. *People v. Hammond*, 2011 IL 110044, ¶ 53. The best indication of that intent is the plain language of the statute itself. *Id.* If the statute's language is clear and unambiguous, we will give effect to the statute's plain meaning without resorting to other aids of statutory construction. *Palm v. Holocker*, 2018 IL 123152, ¶ 21. We must view the statute as a whole and in light of other relevant statutory provisions. *Id.* We review *de novo* the application of statutory evidentiary privileges and exceptions. *Id.*

¶ 33 Section 8-802 of the Code states "[n]o physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient." 735 ILCS 5/8-802 (West 2016). This physician-patient privilege exists to "protect the patient from invasions of privacy." *Palm*, 2018 IL 123152, ¶ 20. "The purpose of the privilege is to encourage full disclosure of all medical facts by the patient in order to ensure the best diagnosis and outcome for the patient." *Id.* Section 8-802 provides 14 exceptions to the physician-patient privilege. 735 ILCS 5/8-802 (West 2016). In this case, defendant takes issue with the circuit court's application of exceptions provided in subsections 8-802(4) and (7).

¶ 34                              i. Subsection 8-802(4)

¶ 35 Defendant first argues that the section 8-802(4) exception to the physician-patient privilege does not apply and permit the introduction of his medical records into evidence. Subsection 8-802(4) states that the physician-patient privilege is inapplicable "in all actions brought by or

against the patient *** wherein the patient's physical or mental condition is an issue."[2] *Id.* § 8-802(4). Defendant's first argument turns on the meaning of "an issue."

¶ 36 In *Palm*, 2018 IL 123152, our supreme court was similarly tasked with defining what "an issue" means for purposes of the subsection 8-802(4) exception. The issue arose in the context of a personal injury suit resulting from an automobile accident. During the pretrial proceedings, plaintiff asked defendant to answer several interrogatories pertaining to defendant's medical and physical condition. *Id.* ¶¶ 3-6. Defendant refused to answer two interrogatories that inquired as to the name of his physician or ophthalmologist and the dates of medical examinations and treatments. Defendant objected to these questions because they violated the " 'doctor-patient privilege' " and defendant had not placed his medical condition at issue. *Id.* ¶ 7. Plaintiff filed a motion to strike defendant's objection and compel defendant to answer. Plaintiff argued that defendant's ability to see and drive was at issue because he drove his vehicle into a pedestrian. *Id.* ¶ 8. The circuit court granted plaintiff's motion and directed defendant to answer the interrogatories. *Id.* ¶ 9. Defendant refused, and eventually, the court found defendant's attorney in contempt of court. *Id.* ¶ 10.

¶ 37 On review, the supreme court noted that "[t]he legislature's intent in enacting section 8-802(4) is not clear, and the cases interpreting that section are inconsistent in applying it." *Id.* ¶ 28. The supreme court then made two findings relevant to our analysis in this case. First, "the physician-patient privilege belongs to the patient and therefore only the patient may waive it by putting his physical or mental condition at issue." *Id.* Second, a broad application of subsection 8-802(4), allowing disclosure in every case in which a patient's medical condition is "relevant" would render the other 13 exceptions in section 8-802 of the Code unnecessary. *Id.* ¶ 29. The supreme court concluded

> "the question facing this court is whether the legislature's intent in enacting subsection (4) was to codify the near-universally recognized principle of waiver by implied consent or to enact a broadly applicable exception allowing the privilege to be vitiated any time a party's medical condition is relevant. For the reasons set forth above, we believe it was the former." *Id.* ¶ 33.

The supreme court "express[ed] no opinion on those criminal cases that have held that subsection (4) applies when the legislature has made a party's physical or mental condition an element of an offense." *Id.*

¶ 38 By taking no position on the applicability of subsection 8-802(4) to criminal cases where a defendant's physical or mental condition is an element of the offense (see *id.*), the supreme court left open the possibility that its rationale could apply to the instant case where defendant's physical or mental condition was not an element of the offense. Here, the State charged defendant with predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)). The charge included the following elements: (1) defendant was 17 years of age or older, (2) defendant knowingly committed an act of sexual contact with C.B., (3) for the purpose of sexual gratification, and (4) C.B. was under 13 years of age. *Id.* Defendant's physical or mental condition is not one of these elements. Instead, defendant's physical condition is relevant to and highly probative of the element of sexual contact, as C.B. had been

---

[2]A patient's medical records are protected by the physician-patient privilege unless an exception under section 8-802 applies. *People ex rel. Department of Professional Regulation v. Manos*, 202 Ill. 2d 563, 576 (2002).

diagnosed with chlamydia, an STD that defendant had also been diagnosed with. However, relevance and probative value alone are insufficient to invoke the subsection 8-802(4) exception. See *Palm*, 2018 IL 123152, ¶ 29. Moreover, under the *Palm* rationale, the State may not place defendant's medical condition at issue by alleging that defendant had an STD, to force defendant to waive the privilege, as this would permit the State to waive defendant's privilege for him. See *id.* ¶¶ 30-32. Therefore, we find that the *Palm* rationale applies to the instant case and prohibits the application of subsection 8-802(4).

¶ 39    We note that several other criminal cases have found the subsection 8-802(4) exception applicable in criminal prosecutions. However, these cases are distinct from the instant case because they involve criminal charges that include, as an element of the offense, defendant's physical or mental state. See *People v. Botsis*, 388 Ill. App. 3d 422, 435 (2009) (finding the subsection 8-802(4) exception applicable to a prosecution for aggravated reckless driving and reckless homicide because defendant's physical and mental condition established the element of recklessness); *People v. Popeck*, 385 Ill. App. 3d 806, 810 (2008) (finding subsection 8-802(4) allowed the release of defendant's medical information as it related to an element of the charged driving while under the influence (DUI) offense); *People v. Wilber*, 279 Ill. App. 3d 462, 468 (1996) (finding the physician-patient privilege inapplicable to defendant's statement to the paramedics that he consumed several beers prior to the collision because defendant's mental and physical conditions were directly at issue in the DUI prosecution); *People v. Nohren*, 283 Ill. App. 3d 753, 762 (1996) (finding the subsection 8-802(4.1) exception to the physician-patient privilege permitted the disclosure of defendant's medical record because defendant's physical or mental condition was an element of the offense); *People v. Krause*, 273 Ill. App. 3d 59, 63 (1995) (holding "[t]he criminal prosecution of a patient for a DUI offense is an action against a patient within the scope of exception (4) to the physician-patient privilege"); see also *In re Detention of Anders*, 304 Ill. App. 3d 117, 123 (1999) (finding the subsection 8-802(4) exception applied in a sexually violent person's commitment proceeding because respondent's mental condition was an issue that was the subject of the proceedings). Therefore, we find that the court erred in finding defendant's medical records excepted from the physician-patient privilege under subsection 8-802(4).

¶ 40                              ii. Subsection 8-802(7)

¶ 41    Defendant next argues that the court erred in finding evidence of his medical condition admissible under the subsection 8-802(7) exception to the physician-patient privilege. The State argues that defendant's medical condition was admissible under subsection 8-802(7) because a DCFS report was made.

¶ 42    Subsection 8-802(7) serves an exception to the physician-patient privilege where "actions, civil or criminal, arising from the filing of a report in compliance with the *** Act." 735 ILCS 5/8-802(7) (West 2016).

¶ 43    In conjunction with the Act, the purpose of subsection 8-802(7) is to protect children by permitting the disclosure of reports of abuse and neglect under the Act. See 325 ILCS 5/2(a) (West 2016). Mandated reporters, including medical professionals, are required to report observations and medical diagnosis, which trigger a report under the Act. *Id.* § 4. Here, the purpose of the Act was satisfied when Meumann, a school counselor, reported C.B.'s allegation of sexual abuse to DCFS. The records at issue did not "arise[ ] from" making a report under the Act. 735 ILCS 5/8-802(7) (West 2016). Therefore, the exception does not apply.

¶ 44    Moreover, the statute does not apply to Barnes's testimony regarding defendant's medical condition where Barnes, a medical professional, did not make a report under the Act. The plain language of the statute excepts from the physician-patient privilege information "arising" from the filing of a report in compliance with the Act. *Id.* Here, there is no indication that defendant's medical records regarding his chlamydia diagnosis and treatment *arose from* the DCFS investigation or report. The record indicates that defendant independently sought medical care on May 23, 2017, approximately two weeks after C.B. reported the sexual abuse to Meumann. Additionally, the State obtained defendant's medical records through its own investigation and by subpoena, rather than through the DCFS investigation and report. Since defendant's medical condition information was not procured from a DCFS report or investigation, we reject the State's assertion that subsection 8-802(7) excepts the information from the physician-patient privilege.

¶ 45    We further find that the State's reading of subsection 8-802(7) is overly broad and would automatically waive the physician-patient privilege of all individuals connected to or implicated in a report filed under the Act. *Cf. Anders*, 304 Ill. App. 3d at 123 (finding the subsection 8-802(4) exception applicable in a sexually violent persons commitment proceeding because defendant's mental condition was an issue that was the subject of the commitment proceeding). Such a broad reading would render the other 13 exceptions to the privilege meaningless in cases that involve or relate to a DCFS report. See *Palm*, 2018 IL 123152, ¶ 29.

¶ 46                                        iii. Harmless Error

¶ 47    The State argues that any error was harmless, as the evidence against defendant was overwhelming. An evidentiary issue will be deemed "harmless when no reasonable probability exists that the jury would have acquitted the defendant absent the error." *People v. Pelo*, 404 Ill. App. 3d 839, 865 (2010), *abrogated on other grounds by People v. Veach*, 2017 IL 120649, ¶¶ 39, 48; see also *In re E.H.*, 224 Ill. 2d 172, 180 (2006) (explaining the difference between harmless error review for evidentiary issues—the reasonable probability standard—and harmless error review for constitutional issues—the "beyond a reasonable doubt" standard (emphasis omitted)).

¶ 48    From our review, there is no reasonable probability that defendant would have been acquitted absent the erroneously admitted medical evidence. The trial evidence established that C.B. reported defendant's sexual abuse at five years old. C.B. was six years old when she testified. Despite her young age, C.B.'s description of defendant's sexual abuse was detailed and consistent. C.B. described defendant placing his penis inside her body. C.B. then described in detail how defendant told her to put her hands on his penis until he ejaculated. C.B. consistently described defendant's penis as "bad spot" and "wiener." C.B. referred to her vagina as her "hoo-ha" and "bad spot" and her anus as her "poo bad spot."

¶ 49    Furthermore, evidence of C.B.'s chlamydia diagnosis was properly admitted into evidence and is not challenged in this appeal. This evidence, combined with Krueger's testimony that chlamydia can only be transferred by sexual contact, permits the reasonable inference that C.B. received chlamydia as a result of defendant's sexual contact. Thus, Krueger's testimony lent support to C.B.'s allegations even in the absence of defendant's medical records. Accordingly, we conclude that setting aside the erroneous evidence of defendant's medical condition, no reasonable probability of an acquittal exists.

¶ 50                                    B. Hearsay

¶ 51    Defendant argues that the circuit court erred in allowing Barnes to testify that he tested positive for chlamydia because the testimony was based entirely on a report generated by a third party and was inadmissible hearsay. Defendant's argument is unavailing where the State laid the proper foundation for Barnes to testify as an expert, and the testimony regarding the results of defendant's STD tests were admissible.

¶ 52    The admissibility of evidence by the circuit court is reviewed for an abuse of discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12. "The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court." *People v. Foreman*, 2019 IL App (3d) 160334, ¶ 30.

¶ 53    Illinois Rule of Evidence 702 (eff. Jan. 1, 2011) permits the introduction of expert opinion testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." It is well established that an expert may give her opinion based on facts contained in medical records and third-party information. See *Wilson v. Clark*, 84 Ill. 2d 186, 196 (1981). To lay the proper foundation for expert testimony, the foundation must show "that the facts or data relied upon by the expert are of a type reasonably relied upon by experts in that particular field in forming opinions or inferences." *People v. Contreras*, 246 Ill. App. 3d 502, 510 (1993); see also Ill. R. Evid. 703 (eff. Jan. 1, 2011). "[E]xperts may not only consider the reports commonly relied upon by experts in their particular field, but also to testify to the contents of the underlying records." *People v. Williams*, 238 Ill. 2d 125, 144 (2010).

¶ 54    As an expert, Barnes testified that it was a "standard medical practice" to rely on the STD test results generated by the third party. Barnes commonly relied upon the test results to diagnose and treat patients. Barnes reasonably relied on defendant's test results to treat defendant. Therefore, Barnes's testimony regarding defendant's medical condition contained in the records was admissible.

¶ 55                                  III. CONCLUSION

¶ 56    The judgment of the circuit court of Whiteside County is affirmed.

¶ 57    Affirmed.

¶ 58    JUSTICE HOLDRIDGE, specially concurring:

¶ 59    While I agree with the majority's decision to affirm the defendant's conviction, I respectfully deviate from its conclusions regarding the defendant's hearsay claim. I write separately because I would find any analysis regarding the defendant's hearsay claim is unwarranted. The majority already determined that the testimony provided by Barnes regarding the defendant's medical condition was inadmissible under subsections 8-802(4) and (7) of the Code, and that its admission was harmless error. Therefore, the inadmissibility of the defendant's medical condition under either exception bars the testimony, and we need not determine whether it was further barred as hearsay.